**TIPTON COUNTY FARM BUREAU COOPERATIVE ASSOCIATION, INC., Plaintiff-Appellant,**

v.

**Keith HOOVER and Glen B. Paul, Defendant-Appellee.**

**No. 4–784A195.**

Court of Appeals of Indiana, First District.

March 4, 1985.
Rehearing Denied April 23, 1985.

Robert J. Arnold, Gary L. Boring & Associates, P.C., Fountaintown, for plaintiff-appellant.

David M. Adams, Richards, Adams, Boje & Pickering, Noblesville, for defendant-appellee Glen B. Paul.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Tipton County Farm Bureau Cooperative Association, Inc. (Farm Bureau) appeals from the entry of a judgment by the Tipton Circuit Court in favor of Glen B. Paul (Paul) on Farm Bureau's suit to enforce Paul's promise to guaranty the debts of his adopted son, Keith Hoover (Hoover). We reverse.

## FACTS

In March 1981, Hoover sought to purchase certain goods and services on credit from Farm Bureau so that he could plant crops on farm land leased from several others including Paul. Farm Bureau, however, refused to extend any credit to Hoover unless Paul would agree to guaranty the resulting debt. Subsequently, Farm Bureau contacted Paul by telephone. In response to Farm Bureau's inquiry, Paul agreed to "back" Hoover. Neither party questioned what was meant by the term

"back". This oral agreement was never reduced to writing.

Relying on its telephone conversation with Paul, Farm Bureau sold goods and services to Hoover on credit and sent the monthly statements to Paul. Paul did not protest these bills until he mailed a letter to Farm Bureau on February 8, 1983, withdrawing as Hoover's "backer". Neither Hoover nor Paul reimbursed Farm Bureau for the goods and services sold to Hoover on credit.

On April 13, 1983, Farm Bureau filed suit in Tipton Circuit Court seeking payment of the balance due, prejudgment interest and attorney's fees from Hoover and enforcement of Paul's oral promise to "back" Hoover. The trial court entered partial judgment against Hoover for $71,014.39 plus interest and costs on December 20, 1983.[1] On December 30, 1983, the trial court entered a general judgment in favor of Paul on Farm Bureau's complaint. Following denial of its Motion to Correct Errors, Farm Bureau perfected this appeal.

### ISSUES

Due to our resolution of this appeal we need consider only the following two issues:

1. Whether a trial court may enter findings of fact and conclusions of law following the entry of a general judgment when none of the requirements of Indiana Rules of Procedure, Trial Rule 52(B) have been met.

2. Whether the trial court erred, as a matter of law, when it determined that the Statute of Frauds barred enforcement of Paul's oral promise, relied upon by Farm Bureau, to "back" Hoover.

### DISCUSSION AND DECISION

*Issue One*

Before reaching the merits of this appeal, we find it necessary to consider brief-

ly an issue neither party has addressed.[2] On December 30, 1983, the trial court entered a general judgment in favor of Paul. Prior to the reception of evidence, neither party requested specific findings of fact and conclusions of law. On February 17, 1984, however, Paul filed his proposed findings with the trial court. Subsequently, Farm Bureau filed its Motion for Specific Findings of Fact and Conclusions of Law together with its proposed findings. The trial court granted Farm Bureau's motion and entered its findings on February 23, 1984.

Indiana Rules of Procedure, Trial Rule 52(B) governs the trial court's power to enter new findings or amend existing findings prior to the filing of a motion to correct error under Indiana Rules of Procedure, Trial Rule 59. *Holiday Park Realty Corp. v. Gateway Corp.* (1972), 259 Ind. 477, 480, 289 N.E.2d 292, 294; *see also* Trial Rule 52(B). While the rule does not require the trial court to set out written reasons for its action, it must appear from the record that the trial court was acting in accordance with one of the rule's four subdivisions. *Id.* at 481, 289 N.E.2d at 295. Such is not the case here however. Nowhere in the record does it appear that the trial court was acting pursuant to Trial Rule 52(B) when it entered findings of fact and conclusions of law nearly two months after rendering a general judgment in favor of Paul. Therefore, while this court may look to those findings for insight into the trial court's reasons for ruling in Paul's favor, we are not bound by them.

*Issue Two*

Farm Bureau is appealing from a negative judgment. *See Public Service Co. v. Gibbs* (1984), Ind.App., 460 N.E.2d 992, 993 *trans. denied.* Consequently, we will neither reweigh the evidence nor judge

---

1. No appeal has been taken from this portion of the trial court's judgment.

2. While neither party directly raises this particular issue, Farm Bureau did assert that one of the

trial court's findings was clearly erroneous. Because of our resolution of this question, it is unnecessary to address Farm Bureau's specific challenge.

the credibility of witnesses. Rather, we will reverse the trial court's judgment only where the evidence is without conflict and leads to but one conclusion different from that reached by the trial court. *Rogers v. Rogers* (1982), Ind.App., 437 N.E.2d 92, 95; *Spurlock v. Fayette Federal Savings & Loan Association* (1982), Ind.App., 436 N.E.2d 811, 815. Application of this standard of appellate review to the record before this court requires reversal of the trial court's judgment.

Essentially, the only issue raised by the parties concerns whether or not the Statute of Frauds bars enforcement of Paul's oral promise to "back" Hoover. As Paul correctly points out, his oral promise is clearly within the Statute of Frauds.[3] It appears, however, that Indiana permits the enforcement of oral promises which are within the Statute of Frauds where such promises would otherwise be enforceable under the doctrine of promissory estoppel. *Dupont Feedmill Corp. v. Standard Supply Corp.* (1979), 182 Ind.App. 459, 463–64, 395 N.E.2d 808, 811; *Voelkel v. Berry* (1966), 139 Ind.App. 267, 269, 218 N.E.2d 924, 925; *Hurd v. Ball* (1957), 128 Ind.App. 278, 295, 143 N.E.2d 458, 466 *trans. denied; see also* Annot., 56 A.L.R.3d 1037 (1974). Thus, we must determine whether the trial court correctly concluded that the doctrine of promissory estoppel did not apply to the facts of this case.

■ The doctrine of promissory estoppel consists of four elements. Succinctly stated, the doctrine applies where there is: (1) a promise, (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character, (3) which does, in fact, induce such action or forbearance, and (4) injustice can only be avoided by enforcement of the promise. *Larabee v. Booth* (1984), Ind. App., 463 N.E.2d 487, 490; *Lyon Metal Products, Inc. v. Hagerman Construction Corp.* (1979), 181 Ind.App. 336, 338–39, 391 N.E.2d 1152, 1154 (quoting Restatement (Second) of Contracts § 90). In their briefs to this court, the parties dispute only the existence of the second element of this doctrine.

The factual backdrop to this question is relatively clear. When Farm Bureau contacted Paul and asked him if he would "back" Hoover, he merely responded in the affirmative. Paul, a long time area farmer, expressed no equivocation and no reservations to Farm Bureau during this conversation. In fact, Paul did not express any dissatisfaction with this arrangement for the next two years despite receiving monthly statements from Farm Bureau detailing the goods and services being provided to Hoover on credit. Then, on February 8, 1983, Paul sent the following letter to Farm Bureau:

"Tipton Ind.
2-8-83

Mr. Larry [sic] Graves.

This is to inform you that I have withdrowan [sic] as Keith Hoover [sic] backer as of June 1st, 1982 I told him then. He is honest and will pay his detbs [sic]. He is in a bind from that IHC, store and farm payments be cause [sic] of low prices.

Thank you.

Send the statement to him and not me.

/s/ Barney Paul"

Record at 180. At trial, however, Paul testified that he did not know what "back" meant. He argues on appeal, consequently, that he did not have the requisite intent

---

**3.** Indiana Code section 32-2-1-1 (Burns 1980) states in relevant part:

"No action shall be brought in any of the following cases:

.   .   .   .   .

Second. *To charge any person, upon any special promise, to answer for the debt, default or miscarriage of another;*

.   .   .   .   .

Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, excepting however, leases not exceeding the term of three (3) years. [Emphasis added.]"

that Farm Bureau would extend credit to Hoover in reliance on his promise to "back" him.

The requirement that the promisor should reasonably expect his promise to induce reliance envisions an objective test. Boyer, *Promissory Estoppel: Requirements and Limitations of the Doctrine,* 98 U.Pa.L.Rev. 459, 461 (1950). Thus, it is not a question of whether the promisor actually foresaw the promisee's reliance. Rather, the issue is whether, in light of all the surrounding circumstances, the reasonable promisor should have expected reliance on the part of the promisee.[4] *Id.* at 462. As one prominent scholar has stated, "It is not the intention of the party estopped *but the natural effect upon the other party which gives vitality to an estoppel.*" (Emphasis added.) 5 S. Williston, *A Treatise on the Law of Contracts* § 691 (W. Jaeger 3rd ed. 1957). Consequently, where all the indicia present at the time the promise is made justify reliance by the promisee, the promisor cannot later assert a secret, previously unexpressed intent different from the one objectively manifested to the promisee prior to his reliance. To hold otherwise would do violence to the guiding principle of the promissory estoppel doctrine. That principle mandates enforcement of promises, justifiably relied upon, where injustice would result were the promisor permitted to subsequently disavow his promise. 1 S. Williston, *A Treatise on the Law of Contracts* §§ 100, 140 (W. Jaeger 3rd ed. (1957). Thus, we must enforce Paul's oral promise to "back" his adopted son despite his testimony at trial that he did not know what was meant by that promise.

The judgment of the trial court is reversed and the cause remanded with instructions to enter judgment in favor of Farm Bureau.

ROBERTSON and NEAL, JJ., concur.

4. This test is the same one employed when analyzing forseeability in lawsuits based on a negligence theory. Restatement (Second) of Contracts § 90 comment a (1981).