SECURITY BANK & TRUST CO., Appellant (Plaintiff-Counter-defendant),

v.

Francis H. BOGARD, Appellee (Defendant-Counter-plaintiff).

No. 4–985A246.

Court of Appeals of Indiana, Fourth District.

June 30, 1986.

H. Brent Stuckey, Hart, Bell Deem, Ewing & Stuckey, Vincennes, for appellant.

Dennis R. Majewski, Terre Haute, for appellee.

MILLER, Judge.

Security Bank & Trust Co. sued Francis Bogard because he was in default on seven promissory notes. Bogard counterclaimed, alleging Security caused the default because it agreed to a loan for his farming operations and then refused to lend him any money. The trial court granted judgment to Security on the defaulted notes and to Bogard on his counterclaim for damages. Security appeals, challenging the trial court's conclusion that it was liable to Bogard either for breach of contract or under the doctrine of promissory estoppel.

We reverse.

## FACTS

Security is a banking institution with its principal place of business in Vincennes, Indiana and a branch in Oaktown, Indiana. Bogard, a farmer in Sullivan County, had

done business with Security since 1949. In the spring of each crop season, Bogard established a line of credit at Security which would advance money to Bogard for the payment of production expenses. Although repayment was to be made at harvest time, the notes were carried over many of the years because Bogard was unable to repay them.

Bogard's loans did not require approval by the loan committee of the bank for the first twenty or twenty-five years of their banking relationship. For the last eight or nine years, however, Bogard was aware his credit lines had to be approved by a loan committee in Vincennes at the main branch. Nevertheless, Bogard claimed that the previous Oaktown branch manager, Bruce Mayall, told him the loan committee acted upon his recommendation so that Bogard concluded the loan committee approval was simply a formality.

1981 and 1982 were two years of losses for Bogard. In 1982, Bogard was unable to pay his indebtedness for the year plus his carryover from the 1981 losses. At the conclusion of the 1982 crop season, Bogard continued to owe Security in excess of $28,000.

Bogard began negotiating with Michael Chestnut, the Oaktown Security branch manager, in January of 1983 to obtain financing for the 1983 crop year. Chestnut informed Bogard that Security would need additional collateral to secure the past indebtedness and the 1983 credit line because of the carryover losses from 1981 and 1982. In March, Chestnut and Bogard began discussing the possibility of real estate as a collateral for the loan. The two discussed the possibility of a mortgage on twenty-five acres of Bogard's farm land or his house and four acres. After the bank assistant took pictures of the property, Chestnut suggested a value of $1,500 per acre on the 25 acres of farm land for the security on the loan. In Bogard's words, Chestnut said, "Well, I'll take this to the loan committee and within two or three days, we ought to have something here, ready for you to go with." Record, pp. 124–25.

Chestnut later informed Bogard that the loan committee turned down the twenty-five acres as insufficient security. He informed Bogard that Security wanted the additional security of a first mortgage on the house and four acres, a second mortgage on the remainder of his farm, and a first mortgage on his crops and equipment. Bogard was unwilling to comply with these terms.

Meanwhile, Bogard attempted to secure financing elsewhere. The FHA turned him down because he was not the sole operator of his own farm. He was also rejected by First National Bank of Terre Haute because he had three consecutive losses in his farming operations.

On July 15, 1983, Security sued Bogard because he was in default on seven different promissory notes totalling $29,982.72. Bogard counterclaimed, alleging Security agreed to extend him credit so that he could carry on his farming operations. He claimed that as a result of Security's failure to fulfill the promise, he was damaged as a result, including his failure to pay the defaulted notes. To support his claim of damages, Bogard testified that based on Security's representation, he had arranged to rent two hundred and fifty acres of soybean land, forty acres of additional watermelon ground, and equipment, all of which fell through due to lack of financing. He later admitted, however, that the reason he did not obtain the two hundred and fifty acres of soybean land was that the owner had previously rented the land for a two year period to another tenant the year before.

The trial court entered judgment for Security on its claim and Bogard on his counterclaim, and entered the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

1. That Plaintiff/bank and Defendant/counterplaintiff/Bogard had engaged in a course of doing business since 1949.

2. That such business consisted of the bank loaning Bogard money to operate his farm in the coming year.

3. That from year to year Bogard paid his notes one year late, paying only current interest and then the principal the following year from that year's farm income.

4. That the parties had continued this practice for a number of years, perhaps as long as 35 years.

5. That by the admission of the bank's loan officer, Mike Chestnut, Bogard had been a "good customer".

6. That plaintiff had agreed to extend credit to Bogard for the farming year 1982.

7. That in 1982, without notice to Bogard, the bank decided not to extend said credit citing a change in bank policy as the reason.

8. That in disregard of prior practice and the regular course of business the plaintiff decided to enforce the terms of the notes as written.

9. That under the strict terms of the notes Bogard was in default.

10. That as a result of plaintiff's denial of credit for the farming year 1982, Bogard was unable to plant crops to make income and thus was unable to make any payments on the notes.

11. That as a result of the denial of credit for the year 1982, Bogard lost projected profits from the sale of soybeans, grain and watermelons.

12. That Bogard, in reliance of the promise of plaintiff, to extend credit and in reliance of his prior course of doing business with plaintiff entered into contracts and agreements with third parites [sic] to his detriment and damage.

CONCLUSIONS OF LAW

1. That plaintiff caused in whole or part defendant's breach on the notes.

2. By their actions over a large numger [sic] of years, and by oral modification, the parties modified the terms of the notes sued upon so that any party seeking a change could not do so unilaterally.

3. Strict performance of the terms of the notes was waived by plaintiff because their acts showed a relinquishment of several provisions of the notes.

JUDGMENT

It is hereby ordered that Defendant is in default on the notes sued upon and that Plaintiff shall have judgment as prayed.

It is further ordered that Defendant/counterclaimant have judgment on his counterclaim due to Plaintiff/counterdefendant bank's breach of contract.

Counterplaintiff has shown extensive damages, and the Court grants counterplaintiff judgment thereon, however, in the interests of justice and based upon the vicissitudes and speculative nature of farming income the Court grants judgment to counterplaintiff only to the extent that those damages offset the damages of Plaintiff. The Court thus finds both judgments are satisfied.

Costs to Plaintiff."

Record, pp. 75–76.[1]

Security appeals, challenging the sufficiency of the evidence in four areas of the trial court's findings and conclusions:

(1) That Security entered into a binding contract to extend Bogard credit for the 1983 crop year;

(2) That Security is liable on the basis of promissory estoppel;

---

1. As Security notes in its brief, conclusions of law 2 and 3—that the parties had modified the terms of the notes and that strict performance was waived by Security—are irrelevant conclusions because the trial court concluded that Bogard was in default and that Security should have judgment on the notes. Moreover, Bogard does not appeal the propriety of granting Security judgment on the defaulted notes so we need not consider any apparent conflict between the trial court's conclusions and the judgment with respect to Security's claim on the defaulted notes.

(3) That Chestnut, the branch manager, had apparent authority to bind Security to provide the line of credit for the 1983 crop year; and

(4) That Bogard's damages equaled the amount he owed Security on the defaulted notes.

We reach no consideration on the issue of Chestnut's apparent authority or the court's novel and innovative computation of Bogard's alleged damages because we find Security is not liable under the theory of breach of contract or of promissory estoppel.

## DECISION

The crux of Security's first two issues—whether there was a breach of contract or promissory estoppel—centers on the trial court's findings of fact 6 and 12 and conclusion of law 1: that Security agreed to extend Bogard credit for the 1983 farm year;[2] that in reliance on Security's promise to extend him credit, Bogard entered into contracts and agreements with third parties to his detriment and damage; and that Security caused in whole or in part Bogard's breach on the notes. Because Security and Bogard are unsure of the exact theory the trial court used to arrive at its conclusion that Security was liable for Bogard's damages—either because Security entered into a valid contract with Bogard to extend him credit which it then breached or because it was liable upon the theory of promissory estoppel—we will address both issues.

### Enforceability of Contract

■ A fundamental concept of contract law is that a contract is unenforceable if it lacks mutuality of obligation—i.e., if it fails to obligate the parties to do anything. *Seco Chemicals, Inc. v. Stewart* (1976), 169 Ind.App. 624, 349 N.E.2d 733. The general rule is explained as follows:

"Mutuality of obligation is essential to the validity of an executory bilateral contract which is based solely on mutual promises or covenants and unless both parties are legally bound, so that each may hold the other liable for its breach, the contract lacks mutuality and neither party its bound. Thus, mutuality is absent when only one of the contracting parties is bound to perform, and the other party remains entirely free to choose whether or not to perform, and the rights of the parties exist at the option of one only."

17 C.J.S. *Contracts* § 100(1)(1963).

Here, Bogard was not legally bound to borrow the money from Security. In fact, Bogard testified he unsuccessfully attempted to seek financing elsewhere in lieu of obtaining a loan from Security. Because Bogard had no obligation to obtain his financing from Security, any alleged contract between Security and Bogard lacked mutuality of obligation and was thus unenforceable.

### Promissory Estoppel

■ Bogard also attempts to justify the trial court's judgment on the theory of promissory estoppel. While it is true that an otherwise unenforceable promise may be enforced under the doctrine of promissory estoppel, it is crucial to the promisee's cause that he establish the elements necessary for the doctrine to apply. Succinctly stated, the doctrine of promissory estoppel applies where there is: 1) a promise, 2) which the promissor should reasonably expect to induce action or forebearance of a definite and substantial character, 3) which does, in fact, induce such action or forebearance, and 4) injustice can only be avoided by enforcement of the promise. *Tipton County Farm Bureau Co-op v. Hoover* (1985), Ind.App., 475 N.E.2d 38. We need not consider the last three of these elements because Bogard's argument is fatally flawed on the first element—the existence of a promise.

■ Although it is recognized that no special form of words is necessary to cre-

---

**2.** The findings of fact erroneously identify 1982 as the year of the dispute between Bogard and Security. The record reveals and the parties agree that 1983 is the proper year, and we will assume the trial court intended to refer to 1983 and not 1982 in its findings.

ate a promise, the mere expression of an intention is not a promise. 17 Am.Jur.2d *Contracts* § 3 (1964) (citing *E.I. Dupont De Nemours & Co. v. Clairborne-Reno Co.* (8th Cir.1933), 64 F.2d 224, *cert. denied*, 290 U.S. 646, 54 S.Ct. 64, 78 L.Ed. 561). Thus, where A says, "I am going to sell my house. I want $70,000 for it," he has made a mere statement of intention and not a promise. L. Simpson, *Contracts* § 2 (1965) (citing *Farina v. Fickus* (1900), 1 Ch. 331). Moreover, a prediction, opinion, or prophecy is not a promise. Calamari & Perillo, *Contracts* § 2–6 (1977). For example, when a father asked a doctor how long his son would be in the hospital and the doctor replied, "Three or four days, not over four," the doctor was not liable when the son remained in the hospital for over a month because the doctor had made a prediction and not a promise. *Id.* (citing *Hawkins v. McGee* (1929), 84 N.H. 114, 146 A. 641.

■ Here, the trial court concluded Security promised to loan Bogard money when—according to Bogard's testimony—Chestnut said, "Well, I'll take this to the loan committee and within two or three days, we ought to have something here, ready for you to go with." Record, pp. 124–25. The first portion of this statement, however—that he would take the application to the loan committee—was an expression of intention. Moreover, Chestnut's statement that they ought to have something in two or three days ready for him to go with was a prediction. As we previously stated, neither a prediction nor a statement of intention is a promise.[3]

Thus, we conclude no contract existed between Security and Bogard because there was no mutuality of obligation, and Bogard was not entitled to recover under the doctrine of promissory estoppel because no promise was made by Security.

Hence, the trial court's judgment for Bogard on his counterclaim must be reversed.

YOUNG, P.J., concurs in majority opinion.

CONOVER, J., dissents with opinion.

CONOVER, Judge, dissenting.

I respectfully dissent. There was substantial evidence supporting the trial court's finding of promissory estoppel in my opinion.

Bogard had been doing business with Security for 34 years. Throughout this relationship, Security apparently had cloaked its Oaktown branch managers with the authority to approve whatever loans the managers and Bogard agreed upon. The lending committee's so-called final approval was a mere "rubber stamp" formality under the apparent authority the bank bestowed upon the two branch managers with whom Bogard had dealt during that period.

Over the years, Bogard had relied upon the branch managers' claims they had the authority to make the loans he had received from time to time. Bogard never had been turned down and was, according to Security's assertions, a good customer. Based upon past practice, Bogard reasonably believed he would receive the loan he needed to prepare for his upcoming year's farming transactions because the branch manager had approved it. Nothing in the evidence can reasonably be said to put him on notice the approval procedure for this loan would be different from the bank's past practice.

Farming provided Bogard with his livelihood, Bogard's reliance was of a substantial character. Given the long standing nature of the relationship and the detriment which arose from the bank's refusal to make the loan, it is clear to me injustice

---

3. Bogard also cites *Tipton County Farm Bureau, supra,* in support of his argument that the fact he had been involved with Security for thirty-four years and with Chestnut for eleven or twelve years establishes that Security promised to lend him money. In *Tipton County,* however, an oral promise was made. The length of time that the parties had conducted business was probative of another element—whether the promissor should reasonably expect his promise to induce action or forebearance of a definite and substantial character—and not the determination of whether there was a promise or not.

can be avoided only by enforcing the agreement. See, *Citizens State Bank v. Peoples Bank* (1985), Ind.App., 475 N.E.2d 324, 327; *Larabee v. Booth* (1984), Ind.App., 463 N.E.2d 487, 490; *see also* Restatement (Second) of Contracts § 90 (West 1981).

A general judgment will be affirmed if it can be sustained on any legal theory by evidence introduced at trial. *Erie-Haven v. Tippmann Refrigeration Construction* (1985), Ind.App., 486 N.E.2d 646, 648. Accordingly, I would affirm the trial court's finding on the basis of promissory estoppel and remand for further proceedings to determine appropriate damages.