## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2016, 5:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Benjamin Fryman
Christopher A. Buckley
Schwerd, Fryman & Torrenga, LLP
Valparaiso, Indiana

Carla Pyle
Rubino Ruman Crosmer & Polen, LLC
Dyer, Indiana

ATTORNEYS FOR APPELLEES

David W. Westland
Westland & Bennett, P.C.
Schererville, Indiana

Matthew D. LaTulip
Merrillville, Indiana

Robert G. Berger
Highland, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| C&R Remodeling, LLC, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> City of Hammond, Common Council of the City of Hammond, City of Hammond Department of Planning and Development, and City of Hammond Façade Rebate Committee, <br> *Appellees-Defendants.* | December 21, 2016 <br><br> Court of Appeals Case No. 45A03-1604-PL-862 <br><br> Appeal from the Lake Superior Court. <br> The Honorable William E. Davis, Judge. <br> Cause No. 45D05-1311-PL-00112 |

## Darden, Senior Judge

# Statement of the Case

C&R Remodeling, LLC appeals the trial court's order granting summary judgment in favor of the Appellees. We affirm in part, reverse in part, and remand.

# Issue

The issue before us is whether the trial court erred in granting summary judgment in favor of the Appellees on C&R Remodeling, LLC's claims of breach of contract, promissory estoppel, unjust enrichment, and failure to respond to discovery.

# Facts and Procedural History

C&R Remodeling, LLC (C&R), a remodeling and construction company, is located on Hohman Avenue in Hammond, Indiana. Lisa Rapchak served as C&R's chief operating officer.

The City of Hammond (the City) is a municipality located in Lake County, Indiana. The Hammond Economic Development Business Façade Rebate Program (the Rebate Program) was initiated by the City to "increase the physical attractiveness and marketability of [the City's] industrial and commercial area through financial rebates for business property renovation and beautification[.]" Appellant's App. p. 97.

The City of Hammond Department of Planning and Development (the Planning Department) is an administrative department operating within the

City that (among other things) oversaw and administered the Rebate Program. The Façade Rebate Committee (the Rebate Committee) was responsible for visually inspecting renovations performed under the Rebate Program. The Common Council of the City of Hammond (the Common Council), the City's legislative body, (among other things) approved the distribution of funds for renovations performed under the Rebate Program.

[6] The City, the Planning Department, the Rebate Committee and the Common Council will be referred to collectively as "the Appellees."

[7] At some point, the City instituted the Rebate Program to encourage renovation and beautification of business properties located in the commercial and industrial areas of Hammond. Phil Taillon served as the executive director of the Planning Department, which oversaw the program. He contacted Lisa Rapchak and asked if C&R would be interested in renovating the façade of its building, and applying for a rebate under the Rebate Program.[1]

[8] The application process for the Rebate Program was as follows:

> Applications must be reviewed and approved by the Façade Rebate Committee prior to the commencement of the project. A [s]cope of work to be completed, photography of the building prior to work being completed (electronic & originals), and work estimates should be submitted along with the initial application.

---

[1] It appears that C&R's property was located in the commercial district of Hammond.

> Funds will be awarded on a competitive basis, based on the project's overall impact. . . .
>
> After the [façade] project has been completed, the successful applicant must submit the following documentation: paid invoice(s), copy (front and back) of cancelled check(s), electronic and original photography (before and after) of the project. The project is subject to a visual inspection by an Economic Development Department employee. (NOTE: Projects that receive financial awards must complete the work within six months upon receipt of an award notification letter. Failure to complete the work or provide the necessary documentation (i.e. cancelled checks, paid invoices), within six months may result in the rescission of the award amount. . . .

*Id*. The promotional materials for the Rebate Program provided:

> The Department of Economic Development appreciates your investment in the City of Hammond and strives to grant the highest awards possible. However, the rebate schedule . . . lists a maximum award amount. A number of factors are considered when granting façade awards, including the availability of funds and the number of program applicants per year.
>
> The Department of Economic Development reserves the right to increase or decrease the amount of rebate based on the impact or deviation from the projects [sic] initial statement of work.

*Id*. at 51.

[9]   C&R eventually began to renovate the façade of its building, along with two other buildings that it owned and that were located in Hammond. After all of the renovations had been started, C&R submitted an application to receive a

rebate for the renovations. The application was received by the Planning Department on October 8, 2010.[2]

[10] C&R claims the Planning Department "issued a letter awarding [C&R] approximately $13,000.00 for the work completed. . . . However, that amount was never paid . . . because Phil Taillon withdrew the application . . . and literally tore up the award letter while sitting in the home of Lisa and Ray Rapchak."[3] *Id.* at 77. According to Lisa, in November of 2010, Phil explained to her that "the rebate program was expanding and that the incentives would be growing . . . [and] the new program would be 'the old one on steroids'" and that "over 50% of [C&R's] investment" would be refunded. *Id.* at 77, 94.

[11] Thereafter, C&R started façade renovation projects for three additional commercial buildings that it owned and that were located in Hammond. C&R hired various contractors to assist in performing the renovations, but did not retain copies of the invoices that the contractors submitted, and did not retain proof of payment to the contractors.

[12] In 2011, C&R hired Myles Rapchak to (among other things) help C&R complete the second Rebate Program application for the renovation projects that C&R already had completed, as well as the projects not yet completed.

---

[2] C&R did not retain a copy of this application and the application has not been provided in the record on appeal.

[3] The award letter was not provided in the record on appeal because it, presumably, was destroyed.

Although the promotional materials for the Rebate Program required applicants to attach contractor invoices and cancelled checks that would show the work performed and proof of payment, C&R was not able to do so. Because it could not provide original contractor invoices, C&R created invoices and attached the re-creations to the application instead. C&R's second application was received by the Planning Department on September 15, 2011.

[13] On March 16, 2012, the Planning Department sent a letter to C&R stating:

> We are proud to inform you that your application for the Façade Rebate Program has been approved. The Mayor's Office of Economic Development congratulates you and appreciates your efforts to beautify and revitalize your establishment as well as the City of Hammond. Your total rebate amount is **$38,901.40**[.] Payment of the aforementioned amount will be released in the coming weeks pending receipt of the following:
>
> Common Council Approval . . . .

*Id*. at 49. On August 8, 2012, the City issued C&R a rebate of $20,804.02, $18,097.38 less than the amount listed in the March 16, 2012 letter.

[14] On October 28, 2013, C&R filed suit against the Appellees, alleging breach of contract, promissory estoppel, and quasi contract/unjust enrichment. C&R sought judgment against the Appellees for (among other things) the balance of the $38,901.40. C&R also filed a request for interrogatories and for production of documents. The Appellees filed answers and affirmative defenses.

[15] The Appellees later filed motions for summary judgment.[4] C&R filed a combined response to the motions. A hearing was held, and on March 14, 2016, the trial court issued its order granting summary judgment in favor of the Appellees as follows: "Even with a view of the facts that resolves all doubts against the moving party, the facts presented on the claims do not establish a contract either bilateral or unilateral, or any type of detrimental reliance or estoppel, and finally no unjust enrichment." *Id*. at 4. C&R now appeals.

## Discussion and Decision

### Standard of Review

[16] We review a grant or denial of summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). We construe all facts and reasonable inferences to be drawn from those facts in favor of the nonmoving party. *Jacobs v. Hilliard*, 829 N.E.2d 629, 632 (Ind. Ct. App. 2005), *trans. denied*. Summary judgment is appropriate only when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*; *see also* Ind. Trial Rule 56(C). Our review of a trial court's decision is limited to the

---

[4] The Planning Department and the Rebate Committee filed a joint motion for summary judgment on October 20, 2015. The City filed a summary judgment motion on December 4, 2015, incorporating the facts and arguments made by the Planning Department and the Rebate Committee. On February 26, 2016, the Common Council joined in the motions for summary judgment filed by the other Appellees.

evidence designated by the parties to the trial court. *Perdue v. Gargano*, 964 N.E.2d 825, 831 (Ind. 2012).

[17]     While federal summary judgment practice allows a moving party to merely show the party carrying the burden of proof lacks evidence on a necessary element, Indiana's summary judgment standard establishes a higher bar for movants to clear. *Smith v. Taulman*, 20 N.E.3d 555, 559 (Ind. Ct. App. 2014). A movant must affirmatively "negate an opponent's claim." *Hughley*, 15 N.E.3d at 1003 (quoting *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994)). If the moving party carries its burden, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact in order to preclude summary judgment. *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012).

[18]     "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Hughley*, 15 N.E.3d at 1003. "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id*. at 1004.

## Summary Judgment in Favor of the Appellees

[19]     C&R contends that the trial court erred in granting summary judgment in favor of the Appellees on its claims of breach of contract, promissory estoppel, unjust enrichment, and failure to respond to discovery. C&R specifically claims that

there were genuine issues of material fact regarding whether a contract existed between C&R and the Appellees and whether the Appellees breached the contract; whether C&R relied to its detriment upon promises made by the Appellees; and whether the Appellees were unjustly enriched by an increase in assessed property values as a result of the renovations performed by C&R. C&R additionally argues that the grant of summary judgment in favor of the Appellees was error because the Appellees failed to respond to C&R's interrogatories and requests for production.

### *1. Breach of Contract*

[20] C&R first argues the trial court erred in granting summary judgment as to its breach of contract claim because an oral contract existed between it and the Appellees. According to C&R, the existence of a contract was evidenced by the following: the Appellees, and specifically, Phil Taillon, offered rebates to C&R in exchange for C&R's renovations of various building façades; C&R's actions of completing the renovations and then applying for the rebates constituted acceptance of the Appellees' offer; and, consideration exists because C&R would not have undertaken the renovations without a promise from the Appellees of rebates totaling 50% of C&R's investment. C&R alleges that the Appellees breached the contract when they failed to pay C&R the $38,901.40 listed in the March 16, 2012 letter. The Appellees counter that no contract existed because of lack of consideration – specifically, the Appellees did not receive any benefit from C&R's renovations, and C&R did not incur any loss or detriment.

[21] We conclude that no contract existed, oral or written, between C&R and the Appellees. The existence of a contract is a question of law. *Batchelor v. Batchelor,* 853 N.E.2d 162, 165 (Ind. Ct. App. 2006). The basic requirements for a contract include offer, acceptance, consideration, and a meeting of the minds of the contracting parties. *Id.* For an oral contract to exist, the parties must agree to all terms of the contract. *Kelly v. Levandoski*, 825 N.E.2d 850, 857 (Ind. Ct. App. 2005), *trans. denied*. An offer is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981). "To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee." *Indiana Dept. of State Revenue v. Belterra Resort Indiana*, LLC, 935 N.E.2d 174, 179 (Ind. 2010), *modified on reh'g*, 942 N.E.2d 796 (Ind. 2011). Simply put, consideration consists of a bargained-for exchange. *Id.*

[22] The Rebate Program promotional materials advertised an incentive program for local businesses willing to undertake façade renovations. The rebate application instructions provided that an applicant was to seek prior approval of its renovation project. If approved, the Appellees would then issue a rebate award notification letter. After the renovation project was completed, the applicant was required to submit additional documentation before receiving the rebate. Nothing in the explanation of the Rebate Program guaranteed a rebate until numerous requirements were met; and, rebate funding was subject to change and subject to budgetary constraints. Whereas, the designated evidence

indicates that Phil Taillon met with and encouraged C&R to apply for the Rebate Program, neither Phil nor the Appellees made an offer that C&R could accept by submitting a rebate application, such that a binding contract could be created between the parties.

[23] Construing the facts most favorably to C&R, the designated evidence does not support the existence of a contract. As such, the trial court properly granted summary judgment on C&R's breach of contract claim.

### 2. Promissory Estoppel

[24] Next, C&R argues that the trial court erred when it granted summary judgment to the Appellees on C&R's promissory estoppel claim. A party may recover on a theory of promissory estoppel even in the absence of a contract. *First Nat. Bank of Logansport v. Logan Mfg. Co., Inc.*, 577 N.E.2d 949, 954 (Ind. 1991). The estoppel doctrine is based on the rationale that a person whose conduct has induced another to act in a certain manner should not be permitted to adopt a position inconsistent with such conduct so as to cause injury to the other. *See Spring Hill Developers, Inc. v. Arthur*, 879 N.E.2d 1095, 1100 (Ind. Ct. App. 2008) (citation omitted).

[25] A party asserting promissory estoppel must establish five elements: "(1) a promise by the promissor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise." *Biddle v. BAA Indianapolis, LLC*, 860 N.E.2d 570,

581 (Ind. 2007) (citation omitted). The first four elements are questions of fact which guide the determination of the fifth element. *See Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 627 (Ind. Ct. App. 1983).

[26] Although no special form of words is necessary to create a promise, the mere expression of an intention is not a promise. *Security Bank & Trust Co. v. Bogard*, 494 N.E.2d 965, 968-69 (Ind. Ct. App. 1986). Nor does a prediction, opinion, or prophecy constitute a promise. *Id.* at 969.

[27] C&R maintains that it relied to its detriment on promises made by Phil Taillon that C&R would recoup from the Rebate Program a certain percentage of its investment in the renovation projects, and also relied to its detriment on the March 16, 2012 letter from the Appellees that C&R's rebate amount would be $38,901.40. The Appellees dispute this, pointing out that C&R submitted its application for the Rebate Program *after* all but one of the renovation projects was completed. Construing the facts and reasonable inferences in favor of C&R, we find that the grant of summary judgment in favor of the Appellees on C&R's promissory estoppel claim was improper.

[28] Genuine issues of material fact exist as to whether Phil Taillon made a promise to Lisa Rapchak that C&R would receive a certain rebate amount, and whether Lisa (as chief operating officer for C&R) relied upon Phil's alleged promises to C&R's detriment. For example, evidence indicates that Phil met with Lisa on several occasions, encouraged her to apply for the Rebate Program, and discussed C&R receiving a certain amount in rebates. Myles Rapchak, who

commenced employment with C&R in 2011, indicated during a deposition, and Lisa indicated in an affidavit, that C&R began the renovation work prior to submitting an application for a rebate under the new Rebate Program. Appellees' App. pp. 196-97, 213. When Myles was deposed and asked if either he or C&R was aware of the Rebate Program prior to hiring contractors for four of the renovation projects under the second rebate program, he, equivocally, implied: "Not to my knowledge. . . . Honestly, I'm not sure when we became aware of [the program]. I'm not sure at what point during the work being done that we were aware of the rebate." *Id.* at 196-97. However, in her affidavit, Lisa, unequivocally, affirmed that Phil promised her that if C&R applied under the new Rebate Program, C&R would receive a rebate "in excess of 50% for continuing façade work [in Hammond]." *Id.* at 213.

[29] We cannot say that the Appellees affirmatively negated C&R's claim of promissory estoppel. Genuine issues of fact that are material to C&R's promissory estoppel claim preclude summary judgment. The trial court erred in entering summary judgment in favor of the Appellees on this claim.

### 3. Unjust Enrichment

[30] C&R argues that the trial court erred by granting summary judgment to the Appellees on C&R's unjust enrichment claim. We disagree.

[31] Even if there is no express contract, a plaintiff may sometimes recover under the theory of unjust enrichment, which also is called quantum meruit or quasi-contract. *See Bayh v. Sonnenburg,* 573 N.E.2d 398, 408 (Ind. 1991). Unjust

enrichment occurs when a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust. *Id*. The benefit must be one that the defendant impliedly or expressly requested. *Coleman v. Coleman,* 949 N.E.2d 860, 867 (Ind. Ct. App. 2011).

[32]        Principles of equity prohibit unjust enrichment in cases where a party accepts the unrequested benefits another provides despite having the opportunity to decline those benefits. . . .

A party seeking to recover on a theory of quantum meruit must demonstrate that a benefit was rendered to another at the express or implied request of such other party. The plaintiff must also demonstrate that to allow the defendant to retain the benefit without paying for it would be unjust and that the plaintiff expected payment. . . .

*Kelly*, 825 N.E.2d at 860-61 (citations, quotations, and footnote omitted)*.*

[33] C&R specifically argues that due to its renovation projects, the Appellees received the benefit of increased "physical attractiveness and marketability of Hammond's industrial and commercial areas." Appellant's Br. p. 23. C&R further asserts that "the Appellees received a direct and demonstrable benefit by the [creation] of new jobs and increased net assessment value resulting in more tax revenue for the City . . ." *Id*. at 23-24. However, the only evidence C&R designated in support of its argument consisted of information from the Lake County auditor's office that purported to show a post-façade-project net tax assessment increase on three of the six buildings C&R renovated.

Moreover, the Rebate Program did not request that businesses undertake projects to improve their building façades, but instead provided an incentive and an opportunity to apply for rebates if the business was willing to undertake such improvements. C&R was invited to apply for a rebate. It did so, and the Appellees conferred "payment" on C&R in the form of a $20,804.02.00 rebate. No genuine issues of material fact exist as to whether the Appellees were unjustly enriched. The trial court did not err in granting summary judgment in favor of the Appellees on this claim.

### 4. Response to Interrogatories and Request for Production

C&R contends that the Appellees' failure to respond to C&R's discovery requests should have precluded the trial court from granting summary judgment in favor of the Appellees. We disagree.

The Appellees provided responses to C&R's interrogatories and requests for production of documents on January 26, 2016. The trial court issued its order granting summary judgment in favor of the Appellees on March 14, 2016. No error occurred here.

# Conclusion

The trial court correctly found that summary judgment should have been entered in favor of the Appellees on C&R's breach of contract, unjust enrichment, and response to discovery claims. However, the trial court improperly granted summary judgment in favor of the Appellees on C&R's promissory estoppel claim. The judgment of the trial court is affirmed part,

reversed in part, and remanded for further proceedings consistent with this opinion.

[38] Affirmed in part, reversed in part, and remanded.

Brown, J. concurs.

Crone, J., concurring in part and dissenting in part.

| | |
|---|---|
| C&R Remodeling, LLC, | Court of Appeals Case No. |
| *Appellant-Plaintiff,* | 45A03-1604-PL-862 |
| v. | |
| City of Hammond, Common Council of the City of Hammond, City of Hammond Department of Planning and Development, and City of Hammond Façade Rebate Committee, | |
| *Appellees-Defendants* | |

**Crone, Judge, concurring in part and dissenting in part.**

[39] I concur in the majority's reversal of summary judgment in favor of the Appellees on C&R's promissory estoppel claim and in its resolution of the discovery issue. As to the remaining issues, I respectfully dissent.

## Breach of contract

[40] "To be valid, a contract need not be in writing, but in some circumstances may be partly in writing and partly oral, or solely oral." *Sand Creek Country Club, Ltd. v. CSO Architects, Inc.*, 582 N.E.2d 872, 875 (Ind. Ct. App. 1991). I believe that a genuine issue of material fact exists regarding whether a contract was formed between the Appellees and C&R based on the informal dealings between

Taillon and Rapchak, what the terms of the contract were, and whether the Appellees breached it. The facts most favorable to C&R as the nonmoving party on summary judgment indicate that C&R promised to renovate façades in Hammond and submit an application for the Façade Rebate Program in exchange for the Appellees' promise to rebate a certain portion of C&R's expenses upon approval of the application. In my view, these promises constituted the bargained-for exchange required for a valid contract.[5]

[41] Regardless of whether these promises constituted a contract, I believe that a genuine issue of material fact exists regarding whether the Planning Department's March 2012 letter constituted a unilateral contract to pay C&R $38,901.40 subject to a condition subsequent, i.e., approval by the Common Council. Contrary to what the Appellees suggest, there is nothing in the record to suggest that "approval" in this context means anything other than signing off on the disbursement of the specified amount to C&R.[6] In any case, it was their burden as the moving parties on summary judgment to demonstrate otherwise. Also, the Planning Department's statement that C&R's application had been approved could be viewed as a waiver of any failure on C&R's part to comply with the terms of the Rebate Program. Under these circumstances, I would

---

[5] The Appellees claim a lack of consideration, arguing that C&R incurred no detriment and was the only party that received a benefit, i.e., the $20,804.02. On the contrary, C&R invested time, labor, money, and materials in the renovation projects, and the City benefited from increased assessment values for the renovated properties.

[6] There is no evidence that the Common Council was required to approve C&R's application after the Planning Department approved it.

hold that the Appellees have failed to establish as a matter of law that no contract existed, or, in the alternative, that they did not breach the contract by paying C&R only $20,804.02.

## Unjust enrichment

[42] The majority holds that the Appellees were not unjustly enriched because C&R received a rebate of over $20,000. I believe that a genuine issue of material fact exists regarding the value of the benefits that C&R provided, which may be more or less than that amount. In fact, the Planning Department valued C&R's work at $38,901.40 for rebate purposes in its letter. In, sum, I would reverse the trial court's judgment in all respects.