**MEDTECH CORPORATION,**
Biotechnics Corporation,
Appellants–Plaintiffs,

v.

**INDIANA INSURANCE COMPANY, and**
Joe Ferree Agency, Inc., and Thomas A.
Shearer, Appellees–Defendants.

No. 73A01–8912–CV–530.

Court of Appeals of Indiana,
First District.

June 20, 1990.

Robert M. Baker, III, Frederick D. Emhardt, Miller, Faires, Hebert, Woddell & Baker, Indianapolis, for appellants-plaintiffs.

Richard E. Aikman, Jr., William J. Hamilton, Stewart & Irwin, Indianapolis, for appellees-defendants.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Medtech Corporation (Medtech) and Biotechnic (Biotechnic) Corporation appeal the trial court's grant of summary judgment in favor of the Joe Ferree Agency, Inc. (Ferree) and Thomas A. Shearer (Shearer) on Medtech and Biotechnic's complaint alleging the wrongful denial of an insurance claim. We reverse and remand for proceedings consistent with this opinion.

## FACTS

In 1983, Chris and Michael Groninger, presidents of Biotechnic and Medtech, respectively, contacted Shearer of the Joe Ferree Agency in order to obtain insurance for the two corporations. Prior to joining Ferree's Agency, Shearer had been a long-

time employee of the Indiana Insurance Company (Indiana Insurance). On October 6, 1983, through the efforts of Shearer, Indiana Insurance issued to Medtech and Biotechnic an insurance policy which covered the corporations' inventory, equipment, and supplies and which provided liability coverage. On November 27, 1983, while the roof of the building being leased by Medtech and Biotechnic was undergoing repairs, rain cascaded through the roof and damaged the corporations' inventory, equipment, and supplies. Shortly after this incident Michael Groninger reported the loss to Shearer. On November 28, 1983 Shearer prepared a property loss notice and forwarded the document to Indiana Insurance. The document was designated "For Reporting Purposes Only" by Shearer. Chris Groninger stated that Shearer told her that if Indiana Insurance needed further information, the company would ask for it. Chris also stated that Shearer assured her that the property loss notice would preserve Medtech and Biotechnic's claims under the insurance policy, and that the notice would protect Medtech and Biotechnic if the roofing company failed to compensate the corporations for the damage incurred.

Initially the roofing company's insurance carrier indicated that it would pay the claim presented by Medtech and Biotechnic. However, after extended negotiations aggravated by Medtech and Biotechnic's difficulty in ascertaining the value of their destroyed inventory, the roofer's insurance company refused to pay the claim. In August of 1986, Medtech and Biotechnic sought to recover the amount of their loss from Indiana Insurance and thus contacted Shearer. Shearer called Indiana Insurance which indicated that it would deny the corporations' claims because Medtech and Biotechnic did not file a sworn proof of loss within sixty (60) days and did not bring suit against Indiana Insurance within one (1) year of the date of the loss as required under the policy.

Following the denial of their claim, Medtech and Biotechnic filed a complaint against Indiana Insurance, the Ferree Agency, and Shearer on December 3, 1986.

On August 4, 1988, Indiana Insurance moved for summary judgment, and on November 2, 1988, Ferree and Shearer also moved for summary judgment. On November 17, 1988, a hearing was held on the motions, and on March 22, 1989, the trial court entered summary judgment in favor of Indiana Insurance, the Ferree Agency, and Shearer on counts II through V of the corporations' complaint. Because the Ferree Agency and Shearer were not named in count I of the complaint, the trial court's entry of summary judgment effectively ended the litigation against those parties. On April 11, 1989, on its own motion the trial court made final its order with respect to the Ferree Agency and Shearer. From this order, Medtech and Biotechnic now appeal.

## ISSUES

Given Shearer's assurances that the losses suffered by Medtech and Biotechnic were covered under their policy with Indiana Insurance, and that Shearer would take the necessary steps for processing the corporations' claims under the policy, whether or not the trial court's entry of summary judgment in favor of Shearer and the Ferree Agency was erroneous based on:

1. the doctrine of promissory estoppel;
2. the tort of actual or constructive fraud; or
3. the principles of agency.

## DISCUSSION AND DECISION

We note that this is an appeal from the grant of summary judgment in favor of Shearer and the Ferree Agency. When presented with a challenge to the trial court's ruling on a motion for summary judgment our standard of review is well settled: "We consider the contents of the pleadings, affidavits, answers to interrogatories, responses to requests for admissions, and depositions in a light most favorable to the non-moving party to determine whether any genuine question of fact exists, and whether the moving party is entitled to summary judgment as a matter of

law." *Franklin Bank & Trust Co. v. Mithoefer* (1990), Ind.App., 552 N.E.2d 39, 41; *Watson Rural Water Co. v. Indiana Cities Water Corp.* (1989), Ind.App., 540 N.E.2d 131, 132 *trans. denied.*

*Issue One*

 We first address whether or not application of the doctrine of promissory estoppel to the present case requires that we reverse the trial court's entry of summary judgment in favor of the Ferree Agency and Shearer. Assuming, without deciding, that affirmative relief is appropriately gained by arguing the doctrine of promissory estoppel, we hold that summary judgment in favor of Shearer and the Ferree Agency was improper on this count of Medtech and Biotechnic's complaint. The corporations correctly note that "the doctrine of promissory estoppel applies where there is a promise upon which the promisor could reasonably expect to induce action or forbearance of a definite and substantial character which does in fact induce such action or forbearance and injustice can only be avoided by enforcement of the promise." Appellants' Brief at 13; *see Woodall v. Citizens Banking Co.* (1987), Ind.App., 507 N.E.2d 999, 1000, *trans. denied; Security Bank & Trust Co. v. Bogard* (1986), Ind. App., 494 N.E.2d 965, 968; *Tipton County Farm Bureau Co-op v. Hoover* (1985), Ind. App., 475 N.E.2d 38, 41, *trans. denied.* "A promise is a voluntary commitment or undertaking by the party making it (the promisor) addressed to another party (the promisee) that the promisor will perform some action or refrain from some action in the future." *Woodall,* 507 N.E.2d at 1000, *quoting* J. Murray, *Murray on Contracts,* 2–3 (2d Ed.1974). Although no special form of words is necessary to create a promise, the mere expression of an intention is not a promise. *Security Bank,* 494 N.E.2d at 968–69. Nor does a prediction, opinion, or prophecy constitute a promise. *Id.*

 Shearer and the Ferree Agency argue that the representations made by Shearer at most amount to Shearer's opinion as to what was necessary to preserve the corporations' claims, or Shearer's pre-dictions concerning the outcome of the corporations' claims, rather than promises that the actions taken would definitely preserve such claims. However, Medtech and Biotechnic note that Shearer prepared a property loss notice on behalf of the corporations. Also, while aware of Medtech's and Biotechnic's desire to preserve their claims against Indiana Insurance and having worked for Indiana Insurance for a number of years, Shearer assured Chris Groninger that forwarding the notice to the insurance company would have this effect, and that if the insurance company needed more information it would ask for it. Medtech and Biotechnic assert, and we agree, that these assurances constituted promises upon which the corporations relied in not pursuing an immediate claim against Indiana Insurance.

Because we hold that Shearer's statements constituted promises, rather than opinions, Medtech and Biotechnic could have recovered against Shearer and the Ferree Agency based on the doctrine of promissory estoppel and the trial court erred in entering summary judgment in favor of Shearer and the Ferree Agency regarding this theory of recovery.

*Issue Two*

 Medtech and Biotechnic next contend that the trial court erred in granting summary judgment in favor of Shearer and the Ferree Agency on counts III and IV of the corporations' complaint which were based on actual and constructive fraud. The essential elements of actual fraud are a material representation of past or existing facts, which representation is false, made with knowledge or reckless ignorance of its falsity, which causes reliance to the detriment of the person relying on the representation. *First National Bank v. Acra* (1984), Ind.App., 462 N.E.2d 1345, 1348.

Medtech and Biotechnic argue that Shearer's assurances constituted representations of fact upon which the corporations justifiably relied. In support of this contention Medtech and Biotechnic cite the case of *Vernon Fire and Casualty Insurance Co. v. Thatcher* (1972), 152 Ind.App. 692, 285 N.E.2d 660, *trans. denied.* In

*Vernon,* the court of appeals rejected a sufficiency challenge to the trial court's determination that an insurance agent's specific assurance that certain losses were covered under the insured's policy constituted a representation of fact. *Id.* at 707, 285 N.E.2d at 669. In so doing, Judge White noted:

> "We recognize ... that the legal effect of a contract, or of a particular provision of a contract, can often be a matter of uncertainty. In such cases one may in all honesty, candor, and sincerity, state his opinion predicting the ultimate interpretation without thereby making a statement of fact. But what may subjectively be merely an opinion can, nevertheless, be stated as a present existing fact. If the statement thus made as a representation is not true but is *justifiably* relied on as being true, deceit has been practiced. If damage results, liability cannot be avoided on the ground that what was stated as a fact was subjectively intended as merely an opinion."

*Id.* (emphasis in original). The court then stated that "[i]f they [insurance agents] were subjectively stating mere opinions they were reckless in stating them as facts without first having ascertained their truth." *Id.* at 708, 285 N.E.2d at 670. The court thus concluded that the evidence presented was sufficient to sustain a finding by the trial court that the insurance company through its agents made a false representation of policy coverage which it either knew to be false or which it made recklessly without knowledge of its truth or falsity.

■ In the present case Chris Groninger testified Shearer told her the notice sent to Indiana Insurance would be sufficient to preserve the claims of Medtech and Biotechnic should the roofing company fail to compensate the corporations for the inventory loss incurred. Shearer and the Ferree Agency contend that the statements made by Shearer constituted mere opinions or predictions as to what was required to preserve Medtech's and Biotechnic's claims, and note that mere opinion or prophecy cannot be the basis for an action of fraud. *See Captain and Company, Inc. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, 96, *trans. denied; Wisconics Engineering, Inc. v. Fisher* (1984), Ind.App., 466 N.E.2d 745, 756, *trans. denied.* However, given the holding in *Vernon,* we must reject Shearer's characterization of his statements. Even if Shearer's actual intent was merely to offer his opinion as to how to preserve the corporations' claim, the manner in which he relayed that opinion to Chris Groninger easily could have led Chris to rely on Shearer's statement as a representation of fact. Therefore, as in *Vernon,* if Shearer was merely stating his opinion, his failure to ascertain the truth of his statements was reckless, and an action for actual fraud may be based on reckless misrepresentation. Given that under our standard of review we are required to review the record in a light most favorable to the non-moving party, Medtech and Biotechnic herein, we must conclude that the trial court erred in entering summary judgment in favor of Shearer and the Ferree Agency on the corporations' claim of actual fraud.

■ We next discuss whether or not the trial court erred in entering summary judgment in favor of Shearer and the Ferree Agency based on Medtech's and Biotechnic's claim of constructive fraud.[1] "Constructive fraud is the breach of a legal or equitable duty which is fraudulent because of its tendency to deceive others, to violate a public or private trust, or to injure public interest." *Sanders v. Townsend* (1987), Ind.App., 509 N.E.2d 860, 865, *trans. denied.* The elements of constructive fraud are: (1) a duty existing by virtue of the relationship between the parties; (2) representations or omissions made in violation of that duty; and (3) reliance on that

---

1. In their appellants' brief Medtech and Biotechnic devote little more than a single paragraph to the theory of constructive fraud. Despite the fact that the corporations' argument can barely be deemed cogent on this point, we will address the merits of the constructive fraud theory of recovery as our ability to review the question is not entirely thwarted by the appellants' inadequate discussion. *See* Ind.App. Rule 8.3(A)(7).

representation or omission by the individuals to whom the duty is owed and to the detriment of that individual. *Id.*

■ To have a valid claim for constructive fraud, however, Medtech and Biotechnic must demonstrate that having obtained insurance for the corporations and apparently having undertaken the task of processing the corporations' claims under that insurance, Shearer and the Ferree Agency owed Medtech and Biotechnic a legal or equitable duty.[2] This court has held on numerous occasions that accompanying an undertaking to procure insurance is a duty to exercise reasonable skill, care, and diligence. *Town and Country Mutual Insurance Co. v. Savage* (1981), Ind.App., 421 N.E.2d 704, 707; *see Village Furniture, Inc. v. Associated Insurance Mangers, Inc.* (1989), Ind.App., 541 N.E.2d 306, 308. The question remains, however, whether such a duty translates beyond merely procuring insurance to include the processing of claims. Applying the general principles of law associated with the assumption of a duty, we hold that a duty to use reasonable skill, care, and diligence may arise when pursuing an insurance claim on behalf of an insured. The courts of the State of Indiana have recognized that " 'a duty may be imposed upon one who by affirmative conduct ... assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken.' " *Lather v. Berg* (1988), Ind.App., 519 N.E.2d 755, 766, *trans. pending* (*quoting Board of Commissioners v. Hatton* (1981), Ind.App., 427 N.E.2d 696, 699, *trans. denied.*) The actor must have specifically and deliberately undertaken the duty which he is charged with having done negligently. *Lather,* 519 N.E.2d at 767. It is also important that the party on whose behalf the duty is being undertaken relinquish control of the obligation; the party who adopts the duty must be acting *"in lieu of"* the original party. *Id; see also Teitge v. Remy Construction Co.* (1982), Ind.App., 526 N.E.2d 1008, 1014; *Phillips v. United Engineers and Constructors, Inc.* (1986), Ind.App., 500 N.E.2d 1265, 1269; *Plan–Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212, 1219. Whether a party has assumed a duty and the extent of that duty, if any, are questions for the trier of fact. *Phillips,* 500 N.E.2d at 1269.

■ In the present case, there is evidence to suggest that in preparing the property loss notice and assuring Chris Groninger that the notice would be sufficient to preserve the claim, Shearer undertook the responsibility to see that the corporations' claim was preserved. Having undertaken such a responsibility, Shearer was required to keep himself abreast of the documentation needed to preserve such a claim. In relying on Shearer's ability to properly preserve their claim, the corporations did not contact Indiana Insurance themselves. Shearer's handling of the claim ultimately resulted in the corporations not receiving any compensation for their inventory loss. The evidence before the court was such that a jury could find every element of a claim for constructive fraud, and summary judgment on this basis was inappropriate.

■ We also note that under both the actual and constructive fraud theories of fraud, reliance on the omission or misrepresentation must be justified before the fraud becomes actionable. *See Sanders,* 509 N.E.2d at 865; *Vernon,* 152 Ind.App. at 707, 285 N.E.2d at 669. Shearer and the Ferree Agency argue that even if Shearer's statements did constitute misrepresentations, Biotechnic and Medtech were not justified in relying on those statements. Shearer and the Ferree Agency point out that generally an " 'insured has a duty to learn the contents of the policy himself, even though it becomes necessary to have

2. In *Vernon,* the court of appeals appeared to consider to some extent the unique relationship between the insured and the insurance agent when it found that the agent's false representations constituted the basis for a claim of actual fraud. In *Vernon,* the court of appeals discussed the relationship simply to highlight the fact that any false information given by the agents had to be given knowingly or with reckless disregard for its falsity. However, the relationship between the insured and the insurance agent was not found to be the basis for a cause of action.

some third person read the contents to him.' " *Penwell v. Western and Southern Life Insurance Co.* (1985), Ind.App., 474 N.E.2d 1042, 1044 (*quoting Ohio Casualty Insurance Co. v. Rynearson* (7th Cir.1974), 507 F.2d 573, 581). However, as Shearer and the Ferree Agency concede, certain exceptions to the duty placed upon the insured to acquaint itself with the policy do exist. *Village Furniture,* 541 N.E.2d at 308. Reasonable reliance upon an agent's representations can override an insured's duty to read his insurance policy. *Id.* Whether or not such reliance is reasonable is a question of fact. *Id.*

In the present case, Medtech and Biotechnic claim they relied on the actions and statements of Shearer, whom the corporations knew worked for Indiana Insurance for a number of years, and therefore, did not attempt to pursue their inventory loss claim directly against Indiana Insurance. Given the complexity of today's insurance contracts we cannot say as a matter of law, that such reliance was unjustified.[3] Therefore, the trial court erred in entering summary judgment in favor of Shearer and the Ferree Agency on the corporations' claims of actual and constructive fraud.

*Issue Three*

Medtech's and Biotechnic's final contention is that the trial court erred in entering summary judgment in favor of Shearer and the Ferree Agency on Count V of the corporation's complaint which alleges "breach of agency." The corporations allege that an insurance broker or agent may act as both the agent of the insured and of the insurer. *See* 43 Am.Jur.2d *Insurance* § 114 (1982). Furthermore:

"Whether an insurance broker represents the insurer or the insured is a question which cannot be answered absolutely, but which depends on the circumstances of the particular case."

43 Am.Jur.2d *Insurance* § 113 (1982). However, the sections of American Jurisprudence cited by Medtech and Biotechnic relate solely to the procuring of insurance. Whether or not an insurance agent who acts on behalf of an insured in processing the insured's claim can be deemed the insured's "agent" is a question better left for the application of the general laws relating to agency.

The elements of actual agency are: (1) manifestation of consent by the principal; (2) acquiescence by the agent; and (3) control exerted by the principal. *Hope Lutheran Church v. Chellew* (1984), Ind.App., 460 N.E.2d 1244, 1247. Manifestation of consent and acquiescence need not be in writing. *Dutton v. International Harvester Co.* (1987), Ind.App., 504 N.E.2d 313, 316, *trans. denied.* Generally, agency is a question of fact. *Id.* If an agent does not act in good faith or with due care, he may be held liable to his principal for losses sustained. *Steward v. City of Mount Vernon* (1986), Ind.App., 497 N.E.2d 939, 942.

Medtech and Biotechnic contend that seeking the aid of Shearer and allowing Shearer, whom they knew to be an ex-employee of Indiana Insurance, to pursue their insurance claim on their behalf reflected the corporations' intent to have

---

**3.** In his concurring opinion to the denial of transfer in *Vernon,* Justice Arterburn expanded on the complexity of insurance contracts:

"An insurance contract is a detailed and complex instrument, drafted by expert legal counsel, standardized and presented in mass-produced form and delivered to the applicant for acceptance, normally without benefit of legal counsel on his part. It has been called a 'contract of adhesion' for the reason that the insured is expected to 'adhere' to it as it is, with little or no choice as to its terms. *The Delivery of a Life Insurance Policy,* 33 Harvard Law Review, 198.

Coupled with this situation is the recognized fact that rarely, if ever, does an insured read his insurance contract, although the law has said, with reference to contracts generally, that a party is bound by what the instrument says though ignorant of its terms. In fact, realistically, even if the insured had the inclination to attempt to read the policy, I doubt that he would gain much more knowledge than he previously had because of the technical language he would encounter. I doubt that most lawyers or even judges who say one is presumed to have read his insurance policy ever read them."

260 Ind. 55, 56, 292 N.E.2d 606 (*quoting State Security Life Insurance Co. v. Kintner* (1962), 243 Ind. 331, 339, 185 N.E.2d 527, 531).

Shearer act as their agent in this matter. The corporations further contend that Shearer's statements to Chris Groninger indicate that Shearer consented to this agreement. Therefore, according to Medtech and Biotechnic, Shearer owed them a duty of good faith and due care, which was breached when Shearer and the Ferree Agency failed to preserve the corporations' claim against Indiana Insurance.

 Shearer and the Ferree Agency argue that no such duty existed because Medtech and Biotechnic had a duty to ascertain for themselves the correct procedure for preserving their claim. In contacting Shearer, the corporations were attempting to acquire just that information. The business relationship between the corporations and Shearer and the Ferree Agency was such that Medtech and Biotechnic trusted Shearer, particularly in light of his previous experience with Indiana Insurance, to do all that was necessary to preserve their claim against Indiana Insurance, once Shearer indicated that he would undertake the task. As stated previously in this opinion, reasonable reliance upon an agent's representations can override an insured's duty to read his insurance policy. *Village Furniture*, 541 N.E.2d at 308. Therefore, we hold that the corporations' duty to ascertain for themselves the procedure for preserving their claim was not enough to defeat as a matter of law the duty of good faith and reasonable care owed to Medtech and Biotechnic by Shearer and the Ferree Agency as the alleged agents of the corporations.

After reviewing the evidence in a light most favorable to Medtech and Biotechnic, we hold that the evidence before the court could support a claim that Shearer and the Ferree Agency owed the corporations a duty of good faith and due care, and that in failing to preserve the corporation's claim against Indiana Insurance Shearer and Ferree Agency breached this duty. Given that the question of agency is generally left to the trier of fact, we conclude that the trial court erred in entering summary judgment in favor of Shearer and the Ferree Agency on the corporations' claim of breach of agency.

Reversed and remanded for proceedings consistent with this opinion.

BAKER and STATON, JJ., concur.