**Donald E. WIGGAM and Launa Jeanette Wiggam, Appellants–Plaintiffs,**

**v.**

**ASSOCIATES FINANCIAL SERVICES OF INDIANA, INC. and Associates Financial Life Insurance Company, Appellees–Defendants.**

No. 49A02–9602–CV–111.

Court of Appeals of Indiana.

March 7, 1997.

G.R. Parish, Jr., Morris L. Klapper, Klapper Isaac & Parish, Indianapolis, for Appellants–Plaintiffs.

Brian K. Peters, McHale, Cook & Welch, P.C., Indianapolis, for Appellees–Defendants.

## OPINION

SULLIVAN, Judge.

Donald E. Wiggam and Launa Jeanette Wiggam (the Wiggams), plaintiffs below, appeal the trial court's grant of summary judgment in favor of Associates Financial Services of Indiana, Inc. (AFS) and Associates Financial Life Insurance Co. (AFL).

We affirm.

The following facts, with one significant exception which will be noted below, are not in dispute. On April 3, 1986, the Wiggams applied to AFS for a personal loan in the amount of $44,000. At the same time, AFS offered to arrange for and obtain for the Wiggams a Credit Life Insurance Policy (Credit Life) and a Credit Accident and Health Insurance Policy (Credit Disability) through the Cumberland Life Insurance Co., now known as AFL The Wiggams decided to purchase this insurance. Their purchase of the insurance was reflected upon their loan application, which provided that a premium of $6,500 for the Credit Life coverage and a premium of $1504.34 for the Credit Disability insurance would be added to the principle loan amount. Donald Wiggam's signatures appear on the application next to these amounts under language which respectively recites, "I want single credit life insurance," and "I want credit accident and health insurance." That portion of the application appeared as follows:

**INSURANCE:**

Credit Insurance is not required to obtain this loan and will not be provided unless you sign below. The only insurance provided by the Creditor is from an affiliated company which expects to profit from the insurance.

| TYPE | TERM OF INSURANCE | PREMIUM | SIGNATURE |
|------|-------------------|---------|-----------|
| Single Credit Life Insurance | Term of Loan. | $ 6500.00 | I want single credit life insurance. *Donald E W* |
| Joint Spouse Credit Life Insurance | Term of Loan. | $ –0– | We want joint spouse credit life insurance. |
| Credit Accident and Health Insurance | First __84__ months of loan. | $ 1502.34 | I want credit accident and health insurance. *Donald E Wiggam* |
| Involuntary Unemployment Insurance | First __0__ months of loan. | $ –0– | I want involuntary unemployment insurance. |

Record at 23.

The loan was subsequently approved. A section of the application provides that the "term of decreasing life insurance" was to be 120 months, with a "maximum amount of life insurance" of $100,000. Similarly, the application provided that the "term of disability insurance" was to be 84 months, with a "maximum disability benefit" amount of $29,400, and a "maximum monthly disability indemnity" of $350. Record at 22.

On April 21, 1988, the Wiggams returned to the same AFS office to apply for another personal loan, this one in the amount of $48,900. The Wiggams were assisted by Mr. Craig Keller, assistant manager of the AFS office in question. Mr. Keller was not involved in the 1986 loan transaction. As with the 1986 transaction, however, Keller offered to arrange for and obtain insurance in connection with the Wiggams' loan. The Wiggams contend that Keller offered to provide them with both Credit Life and Credit Disability coverage, the same coverage procured during the 1986 loan transaction. The Wiggams also state that Keller specifically assured them on at least three separate occasions that if Donald Wiggam were to become disabled, the payments on his loan would continue to be made, presumably through proceeds from the Credit Disability insurance.[1]

Keller, however, claims that he never offered to procure Credit Disability insurance for the Wiggams. The 1988 loan application form, identical to the one used in the 1986 loan transaction, shows Donald Wiggam's signature under the word's, "I want single credit life insurance." Record at 25. This language, as in the 1986 loan application form, is next to a box which indicates that the Wiggams' premium for this insurance will again be $6,500. However, unlike in the

---

1. The Wiggams claim that they were never provided with copies of the Credit Life or Credit Disability policies. At any rate, the terms of the policies do not appear to be in dispute.

1986 application, no signature is to be found under the words, "I want credit accident and health insurance". Moreover, the premium for the Credit Disability coverage was stated to be "–0–". The applicable portion of the 1988 application is reproduced as follows:

**INSURANCE:**

Credit Insurance is not required to obtain this loan and will not be provided unless you sign below. The only insurance provided by the Creditor is from an affiliated company which expects to profit from the insurance.

| TYPE | TERM OF INSURANCE | PREMIUM | SIGNATURE |
|---|---|---|---|
| Single Credit Life Insurance | First 120 months of loan. | $ 6500.00 | I want single credit life insurance. _Donald C. W_ |
| Joint Spouse Credit Life Insurance | First –0– months of loan. | $ –0– | We want joint spouse credit life insurance. |
| Credit Accident and Health Insurance | First –0– months of loan. | $ –0– | I want credit accident and health insurance. |
| Involuntary Unemployment Insurance | First –0– months of loan. | $ –0– | I want involuntary unemployment insurance. |

Record at 25.

The 1988 application provides, in pre-printed type identical to that used throughout the rest of the form, that the "maximum disability benefit" is to be $29,400, and that the "maximum monthly disability indemnity" is to be $350. However, directly above these figures in a space entitled "term of disability insurance", the application provides, in typewritten print not of the same kind as is used throughout the rest of the form, the term "N/A". This portion of the application is reproduced as follows:

ASSOCIATES FINANCIAL LIFE INSURANCE COMPANY

P.O. BOX 660029 • DALLAS, TEXAS 75266-0029

**INSURANCE SCHEDULE**

CREDITOR BENEFICIARY: ASSOCIATES FINANCIAL SERV. CO 3837 N HIGH SCHOOL STE 5 INDIANAPOLIS IN 46254

ACCOUNT NUMBER: 0303312

GROUP POLICY NUMBER: 13-002-47

ORIGINAL AMOUNT OF DECREASING LIFE INSURANCE $ ***100,000.00*

SECOND BENEFICIARY: NONE

Monthly Disability Indemnity (Borrower Only) $ NONE

BORROWER (called you) ADDRESS: DONALD E WIGGAM 47 COUNTY RD 200 DANVILLE IN 46122   AGE 52

INSURANCE PREMIUM CHARGE

CO-BORROWER: N/A   AGE

Single Decreasing Life Premium $ **6,500.00*

Joint Decreasing Life Premium $ N/A

Effective Date of Insurance: 04/26/88   N/A

TERM OF DECREASING LIFE INSURANCE: 120 months $ N/A

TERM OF DISABILITY INSURANCE: N/A months

DISABILITY INSURANCE PREMIUM $ N/A

Waiting Period: 7 Days

Maximum Amount of Life Insurance $ 100,000.00

Elimination Period: NONE Days

Maximum Disability Benefit $ 29,400.00

Maximum Monthly Disability Indemnity $ 350.00

TOTAL CREDIT LIFE AND DISABILITY INSURANCE PREMIUM $ *****6,500.00*

Record at 24.

In May of 1992, Donald Wiggam became totally disabled, and in June of 1992 the Wiggams went to the AFS office to advise AFS of Mr. Wiggams' disability and to make a claim for Credit Disability benefits. AFS informed the Wiggams that while both a Credit Life and a Credit Disability policy were obtained in connection with their 1986 loan, only a Credit Life policy was obtained for the 1988 loan.

On May 16, 1994 the Wiggams filed a complaint against AFS and AFL which set forth four separate theories of liability. The Wiggams claimed that the defendants breached an oral contract to procure Credit Disability insurance in connection with the 1988 loan, negligently failed to procure the

insurance, were liable upon grounds of promissory estoppel, and had fraudulently failed to procure the insurance. On September 11, 1995, both defendants moved for summary judgment. The trial court granted the motion on December 4, 1995. The Wiggams appeal the trial court's decision.

In order to prevail upon appeal where a summary judgment motion has been granted in favor of an opposing party, the appealing party has the burden to establish the existence of a genuine issue of material fact from materials designated to the trial court. *Thompson v. Murat Shrine Club, Inc.* (1994) Ind.App., 639 N.E.2d 1039, *trans. denied.*

As noted above, only one fact is in dispute: whether or not Mr. Keller advised the Wiggams that the amount of their loan would be protected by Credit Disability insurance. The Wiggams claim that Mr. Keller assured them that in the event that Mr. Wiggam was disabled, his loan payments would continue to be made, presumably out of proceeds from the Credit Disability policy. Mr. Keller, however, maintains that he never told the Wiggams that they were obtaining Credit Disability insurance in connection with the 1988 loan, or that if Mr. Wiggam became disabled at any time during the period of the loan that the loan would be paid off for the Wiggams. The issue in this case is thus whether this disputed fact is material to the resolution of the Wiggams' claims.

We note here that the Wiggams' brief fails to explain why the causes of action set forth in their complaint cannot be disposed of without a determination as to whether or not Keller made the representations ascribed to him. The Wiggams complain that the trial court focused upon the loan application forms, and claim that this was improper by "arguing" without elaboration that the disputed fact is material to the disposition of their claims. Aside from their conclusory assertion, the Wiggams make two points. First, they argue that an insured's reasonable reliance upon an insurance agent's representations may override the express terms of an insurance contract. Second, they argue that the 1988 loan application did not clearly indicate that the Wiggams were not applying for, and should not expect to be covered by,

credit disability insurance in connection with their 1988 loan.

AFS and AFL argue that summary judgment was properly entered against the Wiggams because an examination of the application for the 1988 loan can lead to only one reasonable inference: that the Wiggams specifically declined the opportunity to procure Credit Disability coverage for the 1988 loan. The Wiggams, however, argue that while the 1988 loan application may suggest that they did not request Credit Disability insurance, their reasonable reliance upon Mr. Keller's alleged representations should override any terms in the application to the contrary. The Wiggams correctly note that in *Medtech Corp. v. Indiana Ins. Co.* (1990) Ind.App., 555 N.E.2d 844, *trans. denied,* we determined that while an insured generally has a duty to become familiar with the contents of an insurance policy, an insured's reasonable reliance upon an agent's representations which contradict the terms of the policy may circumvent the insured's obligation to read the policy. The court in *Medtech* reasoned that, given the complexity of insurance documents, an insured should not be held to have read the terms of an insurance policy at least when an insurance agent has made representations as to the contents of the policy which conflict with the express terms of the policy. Since the court concluded that it could not determine as a matter of law that an insured's reliance upon such representations was unreasonable, it accordingly held that whether such reliance is reasonable is a question of fact. *Id.* at 850. The Wiggams thus believe that the reasonableness of their reliance upon Mr. Keller's alleged representations must be determined as a matter of fact before their claims can properly be disposed of as a matter of law.

■ Appellants contend that the holding in *Medtech, supra* 555 N.E.2d 844, is not applicable here because this case does not involve the terms of a complex insurance contract. Rather, it is argued, this court is faced, as were the Wiggams, with what is described as a short, simple and unambiguous loan application form. We agree with the Wiggams that when an insurance agent makes oral representations about the content

or effect of a complex insurance policy which actually contradict the express terms of the policy, an insured's reasonable reliance upon those representations may override the insured's obligation to read and be familiar with the terms of the policy. However, an examination of the reasoning set forth in *Medtech* persuades us that the holding in that case should not be extended to the present situation.

The Court of Appeals in *Medtech, supra,* 555 N.E.2d 844 explained that its holding was justified by the nature and complexity of insurance contracts. As the court noted, quoting from a separate concurrence in an earlier case:

> "An insurance contract is a detailed and complex instrument, drafted by expert legal counsel, standardized and presented in mass-produced form and delivered to the applicant for acceptance, normally without benefit of legal counsel on his part. It has been called a 'contract of adhesion' for the reason that the insured is expected to 'adhere' to it as it is, with little or no choice as to its terms. (citation omitted).
>
> Coupled with this situation is the recognized fact that rarely, if ever, does an insured read his insurance contract, although the law has said, with reference to contracts generally, that a party is bound by what the instrument says though ignorant of its terms. In fact, realistically, even if the insured had the inclination to attempt to read the policy, I doubt that he would gain much more knowledge than he previously had because of the technical language he would encounter."

*Id.* at 850, n. 3 (quoting *Vernon Fire & Casualty Ins. Co. v. Thatcher* (1973) 260 Ind. 55, 292 N.E.2d 606, 606 (quoting *State Security Life Ins. Co. v. Kintner* (1962) 243 Ind. 331, 185 N.E.2d 527)). This rationale makes it clear that the exception described in *Medtech* simply has no application here. This case does not involve the terms of a complex insurance policy. Rather, it involves a few clear terms in a two-page application for insurance. Nor is this a contract of adhesion under which one must accept the terms of a pre-printed insurance policy as they are written or decline coverage altogether. It is clear from the face of the loan application that, while the Wiggams may not have had any meaningful choice as to the terms of the Credit Life or Credit Disability policies, they were free to choose whether or not their loan would be covered by either of these policies.

Perhaps the most compelling reason that *Medtech*'s exception to the general rule that one is bound to know and understand the contents of written documents he or she signs should not apply here is that an examination of the 1988 loan application leads, as we shall see, to only one reasonable inference: the Wiggams specifically declined the opportunity, clearly offered to them, to purchase Credit Disability insurance. This court dealt with a similar question in *Biberstine v. New York Blower Co.* (1993) Ind. App., 625 N.E.2d 1308, *reh'g denied, trans. dismissed.* In *Biberstine,* the appellant sought to avoid the consequences of a signed, written agreement by claiming that the other contracting party had made oral representations about the agreement which were in conflict with the express terms of the agreement. The appellant in that case claimed that the reasonableness of his reliance upon the alleged representations was a genuine issue of material fact under his fraud claim. The court explained that, while generally the question

> "[w]hether reliance was justified is, on conflicting evidence, a matter for the jury to determine[,] ... where the evidence is so clear as to be susceptible of only one reasonable inference, it is for the court to determine as a matter of law whether plaintiff was justified in relying on the representation."

*Id.* at 1316 (citation omitted). The Wiggams argue that the 1988 loan application does not clearly reflect that they were not applying for, or that they should not have expected to be covered by, Credit Disability insurance. We disagree.

Quite simply, Mr. Wiggam did not sign the box on the 1988 loan application entitled "I want credit accident and health insurance". Moreover, the premium amount for this coverage is listed as "–0–". Record at 25. In the 1986 loan application, which all parties agree resulted in the procurement of Credit

Disability insurance, Mr. Wiggam signed the relevant box, and the application indicated that the premium for the insurance coverage was $1502.34.

It is true that the 1988 loan application, like the 1986 application, provides for a "Maximum Disability Benefit" of $29,400, and for a "Maximum Monthly Disability Indemnity" of $350. Record at 24. However, in both the 1986 and 1988 loan applications, these figures appear to be pre-printed in the same type which is used throughout the rest of the documents. In the 1986 application, above these pre-printed figures, appear the words "Term of Disability Insurance" which are followed the number "84", typewritten in print different from that used throughout the rest of the form, which precedes the pre-printed term "months". Record at 22. However, in the 1988 loan application, after the words "Term of Disability Insurance" appear the typewritten letters "N/A", the universal shorthand rendition of the phrase "not applicable." The clear implication of the language in these contracts is that the maximum disability benefit and indemnity amounts are just that—the maximum amount one could be entitled to if one were covered by this insurance. Further, the fact that in the 1988 application above these amounts, in added typewritten terms, appears the term "N/A" plainly indicates that disability benefit and indemnity amounts were not applicable to the 1988 loan.

The conclusion that the 1988 loan was not to be covered by Credit Disability insurance is further established when one considers the fact that on the same page and in the same section in both the 1986 and 1988 loan applications is found a box entitled "Maximum Disability Indemnity" which is not followed by pre-printed figures. In the 1986 application, the box contains the figure $"350.00" in added, typewritten print. However, in the 1988 application, the same box contains the word "NONE" in added, typewritten print. Record at 22, 24. When considered along with the preprinted benefit and indemnity amounts, these boxes are clearly meant to signify the actual monthly amount of disability payments to which a covered individual would be entitled. Thus, the Wiggams had

clear notice that their loan would not be covered by Credit Disability insurance.

Given the clarity with which the 1988 loan application demonstrates that the Wiggams affirmatively decided to forgo the opportunity to be protected by Credit Disability insurance, we have little difficulty concluding that the question whether Mr. Keller in fact made the assurances ascribed to him is not material to the disposition of the Wiggams' claims, and that AFS and AFL are entitled to judgment as a matter of law. The Wiggams simply may not avoid the consequences of the 1988 loan agreement.

The judgment of the trial court is affirmed.

FRIEDLANDER and RUCKER, JJ., concur.