FERN W. YERKE, JOHN SCHWAB, ROBERT BEASLEY, TRUMAN C. TERRY, WILMA JEAN NICHOLSON, DONALD JENNER, LOREN L. JENNER, WILLIAM E. JENNER, MARY E. MERRYMAN, LULA A. HANCOCK, HAROLD FANCHER, CHARLES O. MILLER, PAULINE TERRY, CONNIE R. SUMMERS, GOLDA SCHWAB, BERDEAN BEASLEY, *v.* HOWARD T. BATMAN, ROBERT S. BATMAN, SETH DENBO, SHELDON J. HAWKINS, ROBERT W. POE, SCOTT S. MILLER

[No. 1-1077A242. Filed June 20, 1978. Rehearing denied August 14, 1978.
Transfer denied December 12, 1978.]

*Willard C. Shrode*, of Evansville, for appellants.

*Harry T. Ice, James S. Cunning, James A. Shanahan, Ice, Miller, Donadio & Ryan*, of Indianapolis, *Robert W. Davis, Davis, Davis & Layson*, of Corydon, for appellees.

## STATEMENT OF THE CASE

LOWDERMILK, J. — Plaintiffs-appellants Fern W. Yerke, John Schwab, Robert Beasley, Truman C. Terry, Wilma Jean Nicholson, Donald Jenner, Loren L. Jenner, William E. Jenner, Mary E. Merryman, Lula A. Hancock, Harold Fancher, Charles O. Miller, Pauline Terry, Connie R. Summers, Golda Schwab, Berdean Beasley, (Yerke, *et al.*), former stockholders of the Marengo State Bank in Marengo, Indiana, brought suit against Howard T. Batman, Robert S. Batman, Seth Denbo, Sheldon J. Hawkins, Robert W. Poe, Scott S. Miller (Directors), all of whom were officers and directors of the Marengo State Bank, alleging that the Directors as dominant stockholders of the corporation, breached a fiduciary duty which they owed to Yerke, *et al.*, who were minority stockholders in the corporation. The trial court, without a jury, held for the Directors, and Yerke, *et al.*, appealed.

## FACTS

The trial court made findings of fact and conclusions of law which are in part as follows:

"1.   The Marengo State Bank (herein 'Bank') in Marengo, Crawford County, Indiana, is a bank organized and chartered under the laws of Indiana, with its principal office and place of business in Marengo. At all relevant times, the Bank had 10,000 shares of issued and outstanding common stock. It is the only bank in Marengo.

\* \* \*

"4.   Each of the Defendants was a director of the Bank on January 25, 1974, and had been for some time prior to that date. On that date, S.J. Hawkins was president of the bank, Robert W.

Poe a vice-president, Carl T. Smith, a vice-president, and Ida Harned, cashier.

"5. Early in November 1973, Raymond P. Sablick approached Robert W. Poe at Poe's place of business in Marengo and asked whether a majority of the stock of the Bank might be for sale. Poe said he did not know. He did nothing further about the inquiry. Late in November 1974, Raymond Sablick came to Poe's place of business with his brother Ronald A. Sablick (herein 'Sablick'), and made an inquiry whether a majority of the stock of the Bank might be for sale. Ronald Sablick said he would be willing to pay $90.00 a share for a majority of the stock. Poe said he would find out. Poe later went to Hawkins. Both Hawkins and Poe knew that Sablick owned the bank at Milltown in Crawford County and was doing a good job with that bank. Hawkins, after talking with Poe, began calling all of the shareholders of the Bank who had, over the years in the past, told him that they wanted to sell their stock. There was no evidence that Hawkins called any person other than those who had indicated a desire to sell, or that he failed to call anyone who had indicated such a desire. . . . When Poe learned that Truman C. Terry had not been called by Hawkins, he told Hawkins he wanted to call him because Terry had told Poe he wished to sell his stock, and that he, Poe, felt an obligation to see him. At the time, holders of stock called by Hawkins had indicated a willingness to sell 5,066 shares, which was a majority of the 10,000 outstanding shares. Poe called on Terry, who was in the hospital in Louisville. Terry said he would sell any amount of his stock at $90.00 that it made no difference to him. Poe said he could and did arrange for the sale of 200 of the shares owned by Terry and his daughter. Poe told Terry that the prospective sale was to Sablick of a majority of the stock of the Bank.

"6. Hawkins had called Howard T. Batman, who was out of the country, about the sale of his stock in the Bank, and talked with the other directors either on the phone or personally. The directors had no meetings in which the sale of the stock was discussed, and took no joint action with reference to the sale. Hawkins did not show to the other directors the list of those electing to sell to Sablick, and their knowledge of who was selling came after the sale. Hawkins, when the list was complete, . . . called Sablick on January 24, 1974 and said he had 5,266 shares ready to be delivered. Sablick thereupon deposited in a Louisville bank, of which the Marengo Bank was a correspondent, $473,940.00. Hawkins issued drafts of the Marengo Bank upon the Louisville bank in payment for the shares on January 25, 1974, or thereafer, as the shares were

delivered to him, and in turn delivered the shares to the bank in Louisville.

"7.   After the sale, Hawkins resigned as president. Hawkins, Poe and Seth Denbo continued as directors of the Bank. Ronald A. Sablick became chairman. Later Hawkins again became president of the Bank, an office he still holds.

\* \* \*

"9.   After Sablick became chairman, he sent a letter . . . to all shareholders of the Bank, [wherein he offered to buy any or all of the remaining shares of stock for $60 per share.] There was no evidence that any of the Defendants knew of the letter prior to its being mailed to shareholders. [Many] . . . shareholders. . . accepted the offer made in the letter and sold their shares at $60.00 a share to Sablick. There was no evidence that any of the Defendants urged any of the Plaintiffs to accept the offer of Sablick. Some shareholders . . . sold no shares, either at $60.00 or $90.00 a share.

"10.   There was no evidence of the apparent fair market value of the shares of the stock of the Marengo State Bank.

### Conclusions of Law

1.   The law is with the Defendants.

2.   No fidcuiary duty of Defendants to Plaintiffs has been shown to exist.

3.   Plaintiffs are not entitled to recover under the complaint and evidence submitted.

4.   Defendants are entitled to judgment in their favor and to recover their costs.

Any of the foregoing Findings of Fact which shall be deemed to be Conclusions of Law shall be treated as Conclusions of Law.

JUDGMENT shall be entered accordingly.

/s/  Charles R. Ratts
Special Judge,
Crawford Circuit Court"

December 8, 1976

(Our inserts)

### ISSUES

The issues which have been presented to this court for review are as follows:

1.  Whether the Directors owed a fiduciary duty to Yerke, *et al.* to notify them that a sale of a majority of the shares of outstanding stock was about to take place for $90 per share and to allow Yerke, *et al.*, the opportunity to participate equally and pro rata in the majority stock sale.

2.  Whether Sheldon J. Hawkins, as president, director, and one of the dominant shareholders of the corporation, was an agent for Sablick and at the same time an agent for the other shareholders who sold their stock for $90 per share, and, as such, had a legal duty to notify Yerke, *et al.*, and the other minority shareholders concerning the majority stock sale.

3.  Whether the judgment of the trial court is contrary to law.

### DISCUSSION AND DECISION

*Issue One*

Yerke, *et al.*, contend that the Directors breached a fiduciary duty owed to Yerke, *et al.*, when the Directors sold their shares of stock for $90 per share without allowing Yerke, *et al.*, to share equally and pro rata in the opportunity to sell for $90 per share. Yerke, *et al.*, contend that they should receive a pro rata share of the $30 per share excess, which the Directors received over that which was received by Yerke, *et al.*, when their shares were sold for $60 per share.

It is correct, as Yerke, *et al.*, contend, that, concerning matters affecting the general well being of the corporation, the officers and directors are fiduciaries to the corporation and to the shareholders of the corporation. See *Epperly v. E. & P. Brake Bonding, Inc.* (1976), 169 Ind.App. 224, 348 N.E.2d 75, and *Hartung v. Architect Hartung/Odle/Burke, Inc.* (1973), 157 Ind.App. 546, 301 N.E.2d 240. However, where a director or officer of a corporation sells his personal shares of stock or buys stock from other shareholders for his personal ownership, and such sale does not affect the general well being of the corporation, the director owes no fiduciary duty to disclose the terms of such sale to other shareholders. See *The Board of Commissioners of Tippecanoe County v. Reynolds* (1873), 44 Ind. 509.

In *Tippecanoe County, supra,* Reynolds, the president, who was also a director, of the Lafayette & Indianapolis Railroad Company, through

an agent who was also a director of the corporation, purchased several shares of the corporation's stock which were owned by Tippecanoe County. The county thought that the railroad was in poor financial condition and sold its share of stock to Reynolds for slightly less than the value of such stock. Shortly thereafter another railroad company purchased the Lafayette & Indianapolis Railroad, and the shareholders of the corporation at the time of the sale experience a large profit. The county contended that Reynolds as president and director, was a fiduciary of the shareholders, and, as such, had a duty to inform the county concerning the financial condition of the corporation prior to purchasing the county's stock. In rejecting the county's contention our Supreme Court stated the following, as found in 44 Ind. at 513-516:

". . . It is said very frequently in the books that the directors of a corporation are trustees of the stockholders, and that the relation of trustee and *cestui que trust*, with its consequences, exists between them. But these expressions must always be understood to have relation to the cases to which they are applied, and not to be of universal application. It may be conceded that, in respect to the property of the corporation, whether it be land, money, securities, capital stock, or other property held by the corporation, and the management of its business, the directors are trustees for the stockholders. The action of the directors in respect to the property of the corporation must affect, to a greater or less degree, the stockholders generally. It has been generally in such cases, or where the action of the directors has affected the whole body of stockholders, that the relation of trustee and *cestui que trust* has been held to exist. . . .

\* \* \*

"It seems to us, however, . . . that . . ., for some purposes, the directors of a corporation stand in a relation similar to that of trustees for the shareholders. This seems to be the case in reference to the management, by the directors, of the property and general affairs of the corporation. These are matters usually entrusted to the directors, and in respect to which they are empowered to act; and their action affects the whole body of shareholders, beneficially or injuriously, in respect to dividends upon, or the value of, their stock.

"But stock in a corporation held by an individual is his own private property, which he may sell or dispose of as he sees proper, and

over which neither the corporation nor its officers have any control. It is the subject of daily commerce and is bought and sold in market like any other marketable commodity. The directors have no control or dominion over it whatever or duty to discharge in reference to its sale and transfer, unless it be to see that proper books and facilities are furnished for that purpose. As the property of the individual holder, he holds it as free from the dominion and control of the directors, as he does his lands or other property. . . .

* * *

"Such being the nature of the interest of the stockholder in his stock, and the directors having no control, power, or dominion over it or duty to discharge in reference to it, beyond the duty devolving upon them to prudently manage the affairs and property of the corporation itself, it seems to us to be very clear, that, in the purchase of stock by a director from the holder, the relation of trustee and *cestui que trust* does not exist between them." (Original emphasis)

Yerke, *et al.*, argue that because *Tippecanoe County, supra*, involved the purchase of shares of stock by a director rather than a sale of stock by a director it is not directly in point and, therefore not applicable to the case at bar. We agree that the facts of *Tippecanoe County, supra*, are not directly in point with those in the case at bar. However, we are of the opinion that the principles of law set forth by our Supreme Court in *Tippecanoe County, supra*, are controlling in the case at bar.

Since, under the rules of law set forth in *Tippecanoe County, supra*, no fiduciary relationship exists between an officer or director and the stockholders of the corporation when, in the absence of fraud or general detriment to the corporation,[1] that officer or director buys or sells his personal stock, we are constrained to affirm the findings and decision of the trial court. Yerke, *et al.*, urge this court to disregard the holding in *Tippecanoe County, supra*, and create on the part of corporate officers and directors who own stock

---

1. See *Perlman v. Feldman* (2d Cir., 1955) 219 F.2d 173, 50 A.L.R.2d 1134, where a sale of a majority of the shares of stock of a corporation by one who was an officer and director was found not to be in the best interest of the corporation. There is no evidence in the case at bar which would indicate that the sale of a majority of the shares of stock to Sablick was detrimental to the general well being of the corporation.

in that corporation a legal duty where none has existed before. This we cannot do. The holding in *Tippecanoe County, supra*, represents the law as it stands in Indiana today, and it cannot be changed in the absence of action on the part of our Supreme Court or the Indiana General Assembly.

*Issue Two*

Yerke, *et al.*, contend that Hawkins, as president and director, was acting as an agent both for Sablick and for the group which sold their shares of stock to Sablick for $90 per share without the knowledge and consent of the minority shareholders, and, as such, violated his fiduciary duty to Yerke, *et al.*, and other minority shareholders.

Yerke, *et al.*, have waived this issue by their failure to present this issue to the trial court for determination. See *New York Life Ins. Co. v. Kuhlenschmidt* (1941), 218 Ind. 404, 33 N.E.2d 340. In the absence of certain special circumstances, which are not present here, this court cannot consider an issue which has been raised for the first time on appeal.

Even if Yerke, *et al.*, had not waived this issue, it would still have no merit. Yerke, *et al.*, maintain that Hawkins, as president and director, was an agent for the stockholders, as well as for Sablick and the group which sold to Sablick for $90 per share. They cite *Bedford Coal & Coke Co. v. Park County Coal Co.* (1909), 44 Ind.App. 390, 89 N.E. 412, as authority for the proposition that an agent cannot legally serve two principals at the same time without the consent of both. They maintian that since Hawkins served as agent for three principals without their consent, he must relinguish his profits gained in the transaction. We do not agree.

As was pointed out in Issue One, *supra*, unless expressly authorized, an officer or director is an agent for the corporation and the stockholders only when his acts affect the general well-being of the corporation as a whole. In the case at bar Hawkins received the profits from the sale of his privately owned stock and nothing more. He acted as a private individual and not as a corporate officer in consummating the sale of a majority of the shares of stock. There was no evidence of fraud or of actions which would be detrimental to the corporation as a whole.

Therefore, for the purposes of selling his stock and that of the others who had previously expressed an interest in selling their stock, Hawkins was acting as an individual and not as an agent for the corporation.

*Issue Three*

Yerke, *et al.*, have waived this issue because of their failure to argue this issue in their brief. See Ind. Rules of Procedure, Appellate Rule 8.3(A)(7) and *City of Whiting v. City of East Chicago* (1977), 266 Ind. 12, 359 N.E.2d 536.

Judgment affirmed.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 376 N.E.2d 1211.