Reid **BIBERSTINE**, Appellant–Plaintiff,

v.

**NEW YORK BLOWER COMPANY**, Edward J. Blondell, Peter H. Mathis, John D. Mathis, John C. Anders, James J. McGrath, Barry L. Benner, and Paul J. Novotny, Appellees–Defendants.

No. 46A05–9212–CV–00458.

Court of Appeals of Indiana, Fifth District.

Dec. 21, 1993.

Rehearing Denied Jan. 24, 1994.

1310

Sallwasser and McCain, V. Michael Drayton, La Porte, for appellant-plaintiff.

Newby, Lewis, Kaminski & Jones, Mark L. Phillips, La Porte, Chapman & Cutler, Frederick V. Lochbihler, Chicago, IL, for appellees-defendants.

RUCKER, Judge.

Upon termination as Vice President of the Mechanovent Corporation, Reid Biberstine made several alternative requests of the New York Blower Company and its Board of Directors. New York Blower Company (NYB) is the parent of Mechanovent Corporation (Mechanovent). Biberstine sought to either (a) keep his shares of stock in NYB or (b) sell the shares to NYB and then repurchase them, or (c) sell the shares to NYB under the provisions of a stock redemption offer. NYB rejected Biberstine's requests, cancelled his shares of stock, and paid him a predetermined price for them. Biberstine filed a three-count complaint asserting numerous theories of recovery. NYB filed a motion for summary judgment which the trial court granted in part and denied in part. Biberstine now appeals. We address the following rephrased issues:

1. Did the trial court err in denying Biberstine access to NYB's corporate records and shareholder list as alleged in Count I of Biberstine's Complaint?

2. Whether there are genuine issues of material fact on the claims of actual fraud, constructive fraud, promissory estoppel and breach of contract as alleged in Count II of Biberstine's Complaint?

3. Whether there are genuine issues of material fact on the claims of breach of fiduciary duty and tortious interference with employment contract as alleged in Count III of Biberstine's Complaint?

4. Did the trial court err in failing to strike NYB's Affidavit filed in support of its motion for summary judgment?

We affirm.

### Facts

NYB is a privately owned corporation organized and existing under the laws of the State of Indiana. At all times relevant to this litigation, NYB was the sole owner of the stock of a separate Indiana corporation known as Mechanovent. Peter Mathis, John Mathis, John Anders, James McGrath, Barry Benner and Paul Novotny (hereinafter referred to collectively as "the Directors") are all officers and members of the Board of Directors of NYB. Peter Mathis also served as President and Chairman of the Board of Mechanovent.

Between 1977 and 1981, Biberstine was employed by NYB; he began as a foreman trainee and was eventually promoted to purchasing manager. In 1981, Biberstine left the employ of NYB and became general manager of Mechanovent; he was later promoted to Vice President. In 1988, Biberstine was appointed to Mechanovent's Board of Directors.

As a key employee of Mechanovent and as an inducement to remain with the company, Biberstine from time to time was granted options by NYB's Board of Directors to purchase shares of NYB stock. Each stock option was governed by a document referred to as the New York Blower Stock Option Plan of 1979 (Option Plan). On each occasion that Biberstine exercised an option to purchase stock, he signed another document entitled "Exercise Agreement—The Stock Option Plan of 1979" (Exercise Agreement). The Exercise Agreement contained a provision which provided in relevant part that if Biberstine's employment terminated for any reason other than death or retirement, then he was required to sell the stock to NYB within 45 days after termination.

In August 1988, and again in February 1989, Biberstine submitted written requests for access to NYB's shareholder records. Both requests were denied. For reasons not entirely clear from the record

before us, Biberstine was terminated from his employment with Mechanovent on April 8, 1991 and removed from its Board of Directors. Upon termination, Biberstine requested to keep his shares of NYB stock despite the buyback provision contained in the Option Plan and Exercise Agreements. In the alternative, Biberstine requested to repurchase the stock after selling it back to NYB. NYB denied the requests.

On May 17, 1991, thirty-nine days after Biberstine was terminated, NYB mailed shareholders a stock redemption offer, allowing them to redeem stock holdings at $375.00 per share. A two-page cover letter accompanying the offer stated, among other things, "[s]tock outstanding under the New York Blower Company Stock Option Plan of 1979 is not eligible to participate." *Record* at 183. Biberstine attempted to submit his stock for redemption pursuant to the offer. NYB refused to redeem the stock, informing Biberstine he was ineligible to participate.

On May 24, 1991, 46 days after Biberstine was fired, NYB cancelled his stock certificates and mailed him a check in the amount of $50,450.90. Also in May, 1991, Biberstine requested access to NYB's financial books and records in order to determine whether he received the correct price for his stock. At that time, Biberstine also requested to view the list of shareholders. NYB denied the requests.

On February 4, 1992, Biberstine filed a twenty-three page Complaint against NYB and the members of its Board of Directors. Count I alleged wrongful denial of access to corporate records; Count II alleged actual fraud, constructive fraud, promissory estoppel and breach of contract; Count III alleged breach of fiduciary duty and tortious interference with employment contract. NYB and the Directors timely filed their answer and affirmative defenses. Thereafter on May 21, 1992, defendants filed a pleading entitled "Motion To Dismiss And For Summary Judgment." Attached to the motion was the Affidavit of James McGrath. On August 7, 1992, Biberstine filed a motion to strike McGrath's

Affidavit.[1] On August 10, 1992, Biberstine filed his response to the motion and attached his own affidavit. Thereafter, the parties filed additional materials in support of and in opposition to the motion.

After a hearing, the trial court granted summary judgment in favor of NYB and the Directors on Counts II and III of Biberstine's Complaint. As to Count I, the trial court denied summary judgment on the question of whether Biberstine was wrongfully denied access to NYB's financial records for the purpose of determining the correct resale price for his stock. In all other respects summary judgment was granted on Count I of Biberstine's Complaint. The trial court entered detailed findings of fact and conclusions of law in support of its judgment. This appeal ensued in due course.

### DISCUSSION

▆▆ Biberstine first challenges various findings of the trial court arguing they are inconsistent and unsupported by the evidence. Therefore, concludes Biberstine, the judgment of the trial court should be reversed. We disagree. Specific findings entered by the trial court when ruling on motions for summary judgment afford the appellant an opportunity to address the merits of the trial court's rationale. *Ace Rent-A-Car v. Indianapolis Airport Auth.* (1993), Ind.App., 612 N.E.2d 1104, *reh'g denied.* The specific findings and conclusions also aid our review by providing us with a statement of reasons for the trial court's actions. However, they have no other effect. *Strutz v. McNagny* (1990), Ind.App., 558 N.E.2d 1103, *trans. denied.* Rather than relying upon the trial court's findings and conclusions, we must base our decision upon the Rule 56(C) materials properly presented to the trial court. When reviewing the propriety of a ruling on a motion for summary judgment, this court applies the same standard applicable to the trial court. *Houin v. Burger* (1992), Ind.App., 590 N.E.2d 593, *trans. denied.*

We must consider the pleading and evidence sanctioned by Ind.Trial Rule 56(C) without deciding its weight or credibility. Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The movant bears the burden of proving the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed favorably to the non-movant. *Id.* Therefore, Biberstine's concerns are duly noted, but we move to the merits of this appeal. However, before doing so we must address a procedural matter.

In his initial brief to this court Biberstine spends considerable time challenging the trial court's judgment on the grounds that it improperly granted the "Motion to Dismiss" filed by NYB. However, as NYB correctly points out where, as here, matters outside the pleadings are presented to and not excluded by the trial court, the motion is properly treated as one for summary judgment. Ind.Trial Rule 12(B).

▆▆ In his reply brief, Biberstine counters that the trial court nonetheless erred because the court failed to notify him of its intention to treat the motion as one for summary judgment. According to Biberstine, NYB's memorandum in support of the motion clearly shows that NYB was requesting dismissal as to Count II and not summary judgment. Biberstine contends the submission of matters outside the pleadings related only to Counts I and III. As a result, Biberstine argues, he was not granted a reasonable opportunity to present Rule 56 materials, and therefore summary judgment as to Count II should be reversed.

▆▆ Where the trial court treats a motion to dismiss as one for summary judgment, the court must grant the parties a reasonable opportunity to present Rule 56 materials. *Carrell v. Ellingwood* (1981), Ind.App., 423 N.E.2d 630. The trial court's

---

1. The trial court never specifically ruled on Biberstine's motion to strike. However, the motion was impliedly overruled by the court's order granting summary judgment. *See Palmer v. State* (1977), 173 Ind.App. 208, 363 N.E.2d 1245.

failure to give notice of its conversion of a T.R. 12(B)(6) motion to one for summary judgment may constitute reversible error. *Ayres v. Indian Heights Volunteer Fire Dep't* (1986), Ind., 493 N.E.2d 1229. For three reasons we find no error here.

First, Biberstine was afforded ample opportunity to present Rule 56 materials in opposition to NYB's motion. The record shows the "Motion To Dismiss And For Summary Judgment" accompanied by the affidavit of James McGrath was filed May 21, 1992. On August 10, Biberstine responded to the motion and simultaneously filed his own affidavit. One month later, NYB filed the affidavits of Peter Mathis and John Nicklas. On October 7, Biberstine filed NYB's Answers to Interrogatories and its Reply to Request for Admissions. Shortly thereafter, the deposition of Peter Mathis was filed and published at the parties' request. Second, Biberstine has not shown what additional material he would have presented if express notice had been given; nor does he argue or demonstrate how the additional materials would have altered the outcome of the proceedings. *See Ayres*, 493 N.E.2d at 1233 (any error in failing to give notice is harmless where party fails to show he could have presented material which might have altered the outcome of the proceedings). Third, contrary to Biberstine's contention, matters submitted to the trial court did not relate solely to Counts I and III. NYB expressly designated items for the court's consideration with regard to all three counts of the Complaint. In addition, Biberstine's Affidavit and other documents submitted to the court contain facts in support of the allegations in Count II. Finding no error we now address the merits of this appeal.

## I.

 Biberstine complains that the trial court failed to recognize his right under Ind.Code § 23–1–52–2 to view NYB's shareholder records. According to Biberstine, he made timely and proper requests to view the records before the cancellation of his stock, and NYB's refusal to comply

with those requests was in violation of the statute. As a result, Biberstine claims, NYB should now be required to make its records available for inspection.

We first observe the trial court denied that portion of NYB's motion for summary judgment which would have precluded Biberstine from obtaining access to NYB's financial records. By so doing, the question of whether Biberstine may examine those records to determine the correct resale price for his stock is left to the fact finder. Neither party appeals the trial court's ruling on this issue. Thus, Biberstine's argument is actually directed to the trial court's ruling with regard to NYB's shareholder list.

Indiana Code § 23–1–52–2(b) provides in pertinent part:

> A shareholder of a corporation is entitled to inspect and copy . . . any of the following records of the corporation if the shareholder meets the requirements of subsection (c) and gives the corporation written notice of the shareholder's demand at least five (5) business days before the date on which the shareholder wishes to inspect and copy: . . . (3) The record of shareholders.

In this case, the evidence is undisputed that on May 24, 1991, Biberstine's stock was cancelled and his name removed from the list of shareholders of NYB. Thus, on February 3, 1992, the date Biberstine's Complaint was filed, he was no longer a shareholder of NYB and had no statutory right to view the record of the shareholders.

 Biberstine counters that he requested and was denied access to the shareholder list in 1988, and again in 1989 while he still owned stock in NYB. Therefore, Biberstine concludes, he should presently be allowed access to the list. Biberstine cites no authority in support of his position and our research reveals no such authority. Any remedy that may have been available to Biberstine in the past for obtaining access to the shareholder list has been forfeited by his failure to timely pursue the remedy. I.C. § 23–1–52–2 does not

confer upon a non-shareholder the right to inspect corporate records. The trial court did not err in granting summary judgment in favor of NYB on this issue.

## II.

Biberstine next contends the trial court erred in entering summary judgment on the various theories alleged in Count II of his Complaint. According to Biberstine there are numerous issues of material fact which preclude judgment in favor of NYB. The facts set forth in Count II presumably establish a cause of action for actual fraud, constructive fraud, promissory estoppel and breach of contract.

### Actual Fraud

Biberstine contends NYB fraudulently represented that despite the buyback provision contained in the Option Plan and Exercise Agreements, upon termination of Biberstine's employment he would be allowed to either keep his stock or repurchase it after selling it to NYB. Biberstine claims these representations induced him to purchase stock in NYB and therefore support an action for fraud. We disagree.

In order to establish actual fraud, the plaintiff must show 1) a material misrepresentation of past or existing fact, 2) made with knowledge or reckless disregard of its falsity, 3) which caused reliance to the detriment of the person relying upon it. *Ryan v. Chayes Virginia, Inc.* (1990), Ind. App., 553 N.E.2d 1237, *trans. denied.*

In support of his fraud claim, Biberstine filed his Affidavit alleging that before he purchased stock in NYB, agents of the company assured him the buyback provision was a "mere formality"; that NYB "would never, and had never, demanded the return of the stock"; and that "those who purchase stock pursuant to the [Plan] were always allowed to either keep their stock or to sell it back and then repurchase the stock without the option plan restriction." *Record* at 106. Although such allegations demonstrate that NYB assured Biberstine he need not relinquish his stock in the event of termination, they are insufficient to establish a claim of actual fraud.

The law in this jurisdiction is well-settled that actual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions or statements of existing intent which are not executed. *Comfax Corp. v. North American Van Lines, Inc.* (1992), Ind.App., 587 N.E.2d 118; *Whiteco Properties, Inc. v. Thielbar* (1984), Ind.App., 467 N.E.2d 433, *trans. denied; Martin v. Grutka* (1972), 151 Ind.App. 167, 278 N.E.2d 586. NYB's representations that it would allow Biberstine to keep his stock in the event his employment was terminated were not misrepresentations of past or existing fact but rather were representations regarding future conduct. Biberstine thus failed to present materials supporting an essential element of his claim for fraud. The trial court properly granted summary judgment in favor of NYB on this claim.

### Constructive Fraud

Biberstine next contends NYB's representations regarding the buyback provision amount to constructive fraud. NYB counters that Biberstine's constructive fraud claim must fail because the Exercise Agreements signed by Biberstine specifically provide that Biberstine was required to relinquish his stock in the event of termination. According to NYB, even assuming its agents made representations to the contrary, such representations were mere statements of opinion upon which Biberstine had no right to rely.

Constructive fraud arises by operation of law when there is a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud. *McDaniel v. Shepherd* (1991), Ind.App., 577 N.E.2d 239. The elements of constructive fraud are 1) a duty existing by virtue of the relationship between the parties, 2) representations or omissions made in violation of that duty, 3) reliance thereon by the complaining party, 4) injury to the complaining party as a proximate result thereof, and 5) the gaining of an advantage by the party to be charged at the expense of

the complaining party. *Medtech Corp. v. Indiana Ins. Co.* (1990), Ind.App., 555 N.E.2d 844, *trans. denied.*

The element of reliance is established only where the complaining party demonstrates he had a right to rely upon the defendant's representations. *Captain & Co. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, *trans. denied.* Ordinarily, one contracting party has no right to rely upon the statements of the other as to the character or contents of a written instrument. *Plymale v. Upright* (1981), Ind.App., 419 N.E.2d 756, 762 citing *Robinson v. Glass* (1883), 94 Ind. 211, 214. The law is designed "to protect the weak and credulous from the wiles and stratagems of the artful and cunning." *Plymale*, 419 N.E.2d at 762. However, where persons stand mentally on equal footing and in no fiduciary relation, the law will not protect one who fails to exercise common sense and judgment. *Paramo v. Edwards* (1990), Ind., 563 N.E.2d 595, 599.

Whether reliance was justified is, on conflicting evidence, a matter for the jury to determine. *Parke County v. Ropak, Inc.* (1988), Ind.App., 526 N.E.2d 732, 736, *trans. denied.* However, where the evidence is so clear as to be susceptible of only one reasonable inference, it is for the court to determine as a matter of law whether plaintiff was justified in relying on the representation. *Plymale*, 419 N.E.2d at 763 citing 37 C.J.S. *Fraud* § 129, p. 455. When confronted with representations which are "simply not the stuff that fraud is made of," this court may find as a matter of law either that the representations are not actionable or that the plaintiff had no right to rely as a matter of law. *Plymale*, 419 N.E.2d at 763.

In *Gary Hobart Savings & Loan Ass'n v. Strong* (1934), 99 Ind.App. 422, 190 N.E. 373, *reh'g denied,* we determined as a matter of law that the plaintiff had no right to rely on oral representations made to him by agents of defendant savings and loan and that the plaintiff rather was bound by the terms of a written deposit agreement. The agreement provided that the plaintiff's $250.00 membership fee could not be withdrawn. Representations by the defendant's agents that the agreement was merely an identification card and that the fee could be withdrawn at any time were mere expressions of opinion upon which the plaintiff had no right to rely.

Further, in *Plymale*, we reversed a jury verdict in favor of the plaintiffs, where the plaintiffs had relied on the defendant's oral representations rather than the terms of a written proposal to purchase real estate. In that case the defendant/seller orally represented to the plaintiffs/buyers that sale of certain real property would take effect upon buyers signing a written proposal and tendering the purchase price. However, the written proposal specifically provided that sale of the real estate would not be consummated until the seller accepted the buyers' offer. We held that the seller's oral representation was "a mere opinion, and as such, [was] inactionable, *i.e.* the plaintiffs had no right to rely upon it as a matter of law." *Plymale*, 419 N.E.2d at 768.

Similarly, here the record reveals the alleged representations by NYB's agents that Biberstine could retain his stock in the event of termination or could repurchase it thereafter were in direct contravention of the express terms of the Exercise Agreements signed by Biberstine. Biberstine signed an Exercise Agreement at the time of his initial stock purchase in February 1986, at which time the alleged representations were made, and again in 1988, 1989 and 1990. Biberstine thus had ample opportunity to become familiar with the agreement's provisions. Further, as discussed below in Issue III, no fiduciary relationship existed between the parties which would require NYB to protect Biberstine's interests. Biberstine thus had no right to rely upon NYB's representations. Because Biberstine failed to establish the element of reliance, his claim of constructive fraud must fail. The trial court properly granted summary judgment on this issue.

### Promissory Estoppel

Biberstine next contends NYB's representations concerning the buy-

back provision give rise to an action for promissory estoppel. The doctrine of promissory estoppel encompasses the following elements: 1) a promise by the promisor, 2) made with the expectation that the promisee will rely thereon, 3) which induces reasonable reliance by the promisee, 4) of a definite and substantial nature, and 5) injustice can be avoided only by enforcement of the promise. *First Nat'l Bank v. Logan Mfg. Co.* (1991), Ind., 577 N.E.2d 949.

We have already determined that Biberstine failed to establish the element of reliance on NYB's representations. Thus, he may not prevail on a claim of promissory estoppel. Summary judgment was properly granted in favor of NYB on this claim.

### Breach of Contract

 Biberstine contends NYB's refusal to redeem his stock pursuant to the May 17, 1991 redemption offer violated the terms of the Option Plan. According to Biberstine, he had a right to redeem his shares pursuant to the offer, as evidenced by the following language contained in the Option Plan: "the purchaser of the stock in accordance with the Plan shall enjoy all the rights and privileges of ownership of the purchased stock ..." *Record* at 36.

 When interpreting an unambiguous contract, we must give effect to the intentions of the parties as expressed in the four corners of the instrument. *Fetz v. Phillips* (1992), Ind.App., 591 N.E.2d 644. Clear, plain, and unambiguous terms are conclusive of that intent. *Id.* We will not construe such terms nor will we add provisions not agreed upon by the parties. *Wilson v. Elliott* (1992), Ind.App., 589 N.E.2d 259.

We disagree with Biberstine that the foregoing Option Plan language gives him a right to redeem his stock pursuant to the May 17, 1991 redemption offer. Rather, the language merely provides that Biberstine shall have the rights and privileges attributable to the "purchased stock." In essence, Biberstine has every right held by every other owner of Option Plan stock. Nothing in the Option Plan reveals that holders of Option Plan stock may redeem

their shares in any manner other than that provided by the Option Plan, namely sale of the stock to NYB at the resale price within 45 days of termination or within three months or one year in the case of death or retirement. NYB's refusal to redeem Biberstine's stock pursuant to the redemption offer did not violate the terms of the Option Plan. The trial court properly granted summary judgment in favor of NYB on this issue.

### III.

Biberstine next contends the trial court erred in entering summary judgment on the theories alleged in Count III of his Complaint. According to Biberstine there are numerous issues of material fact which preclude judgment in favor of NYB. The facts set forth in Count III presumably establish a cause of action for tortious interference with employment contract and breach of fiduciary duty.

### Tortious Interference with Employment Contract

 Biberstine contends he was fired from his employment with Mechanovent as a result of the Directors' actions. Thus, claims Biberstine, the Directors are guilty of tortious interference with his employment relationship. An action for tortious interference with contractual relations is comprised of the following elements: 1) existence of a valid and enforceable contract, 2) defendant's knowledge of the existence of the contract, 3) defendant's intentional inducement of breach of contract, 4) the absence of justification, and 5) damages resulting from defendant's wrongful inducement of breach. *Willsey v. Peoples Fed. Sav. & Loan Ass'n* (1988), Ind.App., 529 N.E.2d 1199, 1206–07, *trans. denied.* The action may be based on a relationship of employment-at-will. *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n* (1991), Ind., 571 N.E.2d 282.

In opposition to NYB's motion for summary judgment, Biberstine filed his own affidavit in which he merely restated the allegations in his Complaint, namely that on April 8, 1991, "Peter H. Mathis and John C. Anders, came into my office just

before lunch and informed me that I was fired ..." *Record* at 108.

■ Directors replied by filing the Affidavit of Peter Mathis in which Mathis alleged "in my capacity as President and Chairman of the Board of Directors of Mechanovent Corporation, I terminated the employment of the plaintiff, Reid Biberstine ..." *Record* at 153. Also, Mathis' deposition which was considered by the trial court under Rule 56 provides testimony that Biberstine's termination was "totally [Mathis'] decision" and that Anders was present merely as a witness. *Record* at 214, 221. Tortious interference with a contractual relationship involves the intervention of a third party, and an officer or director of a corporation will not be held liable for inducing the corporation's breach of contract if the officer's action is within the scope of his official duties. *Martin v. Platt* (1979), 179 Ind.App. 688, 386 N.E.2d 1026.

When a motion for summary judgment is made and supported by materials contemplated by Ind.Trial Rule 56, the adverse party may not rest upon the mere allegations or denials of his pleadings. T.R. 56(E); *ITT Commercial Fin. Corp. v. Union Bank & Trust Co.* (1988), Ind.App., 528 N.E.2d 1149. Rather, he must set forth specific facts showing that there is a genuine issue for trial. If the adverse party fails to meet this burden, summary judgment may be granted. *Id.*

The Directors' motion for summary judgment was supported by Rule 56 materials demonstrating that Biberstine's termination was the sole act of Peter Mathis acting in his capacity as President and member of the Mechanovent Board of Directors. Biberstine did not set forth any specific facts to the contrary. Instead Biberstine rested on the allegations in his pleadings. This was insufficient and summary judgment was properly entered in favor of the Directors.

### Breach of Fiduciary Duty

■ Biberstine next contends Directors failed to deal fairly, honestly and openly with him in terminating his employment, denying him access to corporate records and excluding him from the stock redemption offer. According to Biberstine, such actions amount to a breach of fiduciary duty.

■ As a general rule, officers and directors owe a fiduciary duty to the corporation as well as corporate stockholders. However, this is so only regarding matters that affect the general well-being of the corporation. *Yerke v. Batman* (1978), 176 Ind.App. 672, 376 N.E.2d 1211, *trans. denied.* Where the actions of a director affect the individual rights of a stockholder rather than interests of the corporation or stockholders generally, no fiduciary duty exists. *Id.* 376 N.E.2d at 1215.

In the case before us, the Directors' actions bore no relation to the management of corporate property or affairs nor did they affect the rights of shareholders generally. Rather, the Directors' actions were directed solely toward Biberstine. As a result, the Directors were under no fiduciary obligation to protect Biberstine's interests. Biberstine has failed to demonstrate a fiduciary duty owed to him by the Directors, and his claim for breach of that duty must fail. The trial court did not err in granting summary judgment in favor of NYB on this issue.

### IV.

■ Finally, Biberstine contends the order of summary judgment should be reversed because the trial court erred in failing to strike the Affidavit of James McGrath. According to Biberstine, the affidavit is not made on personal knowledge, McGrath is not competent to testify concerning the matters contained therein and the facts alleged in the affidavit are not admissible as evidence. In addition, Biberstine claims the exhibits attached to the affidavit are unverified and therefore should not have been considered.

Assuming, without deciding that Biberstine's contentions are meritorious, the order of summary judgment must nonetheless stand. As indicated earlier in this opinion we are not bound by the underlying

basis on which the trial court entered summary judgment. Rather, we stand in the shoes of the trial court and consider only those materials properly designated and before the trial court pursuant to T.R. 56. *Moll v. South Central Solar Sys., Inc.* (1981), Ind.App., 419 N.E.2d 154, 163. We need not decide whether the McGrath Affidavit and attached exhibits were properly before the trial court. Rather, the remaining materials which were properly before the trial court and thus properly before this court including Biberstine's Complaint with attached exhibits, Affidavit of Reid Biberstine, Affidavit of Peter Mathis and Deposition of Peter Mathis are sufficient to sustain summary judgment in favor of NYB and its Board of Directors.

Judgment affirmed.

BARTEAU and FRIEDLANDER, JJ., concur.