**In re the Marriage of Kenneth E. EHLE, Appellant–Petitioner,**

v.

**Rochelle A. EHLE, Appellee–Respondent.**

No. 02A03–9911–CV–412.

Court of Appeals of Indiana.

Oct. 25, 2000.

Jack R. Rochyby, Avery & VanGlider, Fort Wayne, Indiana, Attorney for Appellant.

Linda Peters Chrzan, Blume, Connelly, Jordan & Stucky, Fort Wayne, Indiana, Attorney for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Kenneth E. Ehle (Husband), appeals the trial court's order reopening and modifying the property disposition in the dissolution of his marriage to Rochelle A. Ehle (Wife).

We affirm.

Husband presents four issues[1] for our review which we condense and restate as follows:

I. Whether the trial court erred when it reopened the marital estate and modified the property distribution upon the basis of constructive fraud;

II. Whether the trial court erred when it ordered Husband to transfer to Wife one half of the stock in the joint account including the stock split and to pay Wife all dividends attributable to that account since the date of separation; and

---

1. Appellant's Brief formally raises four issues which all pertain to the issue of constructive fraud. However, Husband presents additional arguments attacking the trial court's order to pay Wife half the present value of the joint account and the order for Husband to pay Wife's attorney fees.

III. Whether the trial court erred when it ordered Husband to pay Wife's attorney fees.

The facts relevant to this appeal are that Husband and Wife were married in 1974 and are the parents of three children. On September 11, 1995, Husband filed a Petition for Dissolution of Marriage. A highly contested custody dispute ensued over the three children. Both Husband and Wife were represented by counsel, and Wife, in fact, retained two lawyers to represent her.

Following a pre-trial conference, the trial court ordered the parties to exchange names and addresses of all witnesses and copies of exhibits to be used at trial and further ordered the parties "to file with the Court a marital balance sheet, including date-of-filing values and supporting documentation, as well as a proposed division of assets and liabilities at least [seven] days prior to trial." Record at 102. The court, through its order, further indicated that if a party failed to comply, the case would be removed from the trial calendar and the non-complying party would be subject to sanctions.

A final hearing date was set for October 23, 1996. Husband filed his "Petitioner's Proposed Net Worth Statement" and "Petitioner's Proposed Division of Assets and Debts" on October 15, 1996. Record at 218, 220. Wife also filed her statement of net worth and proposed division of assets, albeit not until October 22, 1996, the afternoon before the final hearing. Both Husband's and Wife's net worth statements indicated three General Electric (GE) Investment accounts and placed a value of $18,841 on the GE Investment Services

Stock Account.[2] However, neither of the parties listed Husband's individual GE stock account as an asset.

On the morning of the final hearing, Husband and Wife entered into a "Stipulation on Net Worth Statement and Division of Assets," which was signed by both parties and their respective counsel. Record at 248. The stipulation included the three previously mentioned GE accounts.[3] The GE Investment Services Stock account was assigned a value of $18,841 and Husband and Wife agreed to divide it equally. On October 23, 1996, the trial court entered a Decree of Dissolution and incorporated the stipulation of net worth and division of assets.

After the divorce, Wife attempted to have her half of the GE stock transferred to her. The transfer was delayed as Husband and Wife could not agree whether the decree ordered transfer of $9,420.00 or one-half of the stock shares. On May 6, 1997, Husband signed a stock power to transfer 81 shares of GE stock to Wife. GE returned the stock power and notified the parties that the stock could not be transferred without the stock certificates. The matter, however, became more complicated because on May 9, 1997, GE had a two-for-one stock split. Wife contacted GE regarding the stock split and discovered the possibility that there were two GE Investment Services Stock Accounts instead of the one Husband had disclosed in his proposed net worth statement and as also reported by Wife.

After alerting Husband's counsel to the omission, Wife attempted to serve GE with a Non–Party Production Request. Hus-

---

**2.** Husband's Statement represented that the account consisted of three hundred twenty (320) shares.

**3.** Those accounts included the following: (1) GE Investment Services LT Shares; (2) GE Investment Services M. Funds; and (3) GE Investment Services Stocks. Record at 218, 245. While Wife submitted her net worth statement and proposed division of assets as one document, Husband tendered separate

documents. Record at 218, 220, 245. For reasons unknown to this court, Husband failed to include the LT Shares account in his proposed division of assets, despite his inclusion of the account in his net worth statement. Record at 218, 220. Nonetheless, all three accounts were included in the "Stipulation on Net Worth Statement and Division of Assets." Record at 247.

.. 

band filed an objection to Wife's request for discovery. After a hearing, the trial court denied Husband's request to quash and ordered that Wife's discovery could proceed. Husband filed a Motion to Correct Errors which the trial court denied.

It was discovered that Husband had included a jointly titled GE stock account (Account No. 2206–319870951) ("joint account") in the net worth statement filed with the trial court but had omitted an individually titled GE stock account (Account No. 2206–319870900) ("individual account"). The omitted individual account contained 292 shares of GE stock valued at over $17,000.

On October 8, 1998, Wife filed a Motion to Reopen and Modify Property Disposition and for Attorney Fees. A hearing was held after which the trial court, upon Husband's request, issued findings of fact and conclusions of law. The trial court found that Husband had committed constructive fraud when he failed to disclose the GE Investment Services Stock individual account in his proposed marital balance sheet. On October 11, 1999, the trial court ordered:

"Petitioner is ordered to immediately transfer to the Respondent one half (½) of the General Electric Stock contained in account number 2206–319870951 as of September 11, 1995 together with all growth and loss including one-half (½) of the May 9, 1997 2 for 1 stock split.

\* \* \*

Petitioner is ordered to immediately transfer to the Respondent one half (½) of the General Electric Stock contained in account number 2206–319870900 as of September 11, 1995 together with all growth and loss including the 2 for 1 stock split of May 9, 1997.

\* \* \*

Petitioner is ordered immediately to pay to Respondent within thirty days of the Order all General Electric Stock divi-dends attributable to the stocks being transferred to Respondent from September 11, 1995 until Respondent['s] shares of stock have been received by her, including all dividends associated with the May 9, 1997 stock split. The Petitioner is also Ordered to pay the Respondent Two Thousand One Hundred Forty–Three Dollars and Eight Cents ($2,143.08) within thirty (30) days of this Order which represents one-half ( ½) of the stock dividends issued since the Date of Separation. In addition, the Petitioner is ordered to pay Respondent one-half (½) of any additional dividends that the Petitioner has received before the stock transfers are completed.

\* \* \*

Petitioner is further ordered to pay Respondent's attorney Two Thousand Nine Hundred Forty–Five Dollars and Ninety–Four Cents (2,945.94) within ninety (90) days from the date of this order."

Record at 374.

### I. Constructive Fraud

Husband contends that the trial court erred when it ordered the parties' property distribution to be set aside and awarded Wife one-half of the GE stock contained in the individual account. Husband asserts Wife is bound to the stipulated value of the marital assets. He further maintains that Wife's claim for constructive fraud must fail because Husband did not have a duty to disclose the existence of the individual account, a necessary element of constructive fraud.

The peculiar nature of a stipulation is that it establishes a particular matter as a fact. "A stipulation of facts is an express waiver by a party or his counsel of the intended issues." *Indiana Dept. of Environmental Management v. Adapto, Inc.* (1999) Ind.App., 717 N.E.2d 646, 650 (citing *B–Dry Owners Ass'n v. B–Dry System, Inc.* (1994) Ind.App., 636 N.E.2d 161, 165, *trans. denied.*). Once the parties enter into a stipulation, and the court ap-

proves it, the stipulation is binding upon all involved. *Wittwer v. Wittwer* (1989) Ind.App., 545 N.E.2d 27, 29.

Wife, upon voluntarily entering into the stipulation of the marital assets and their value was bound by that agreement. As all parties to a lawsuit have, Wife also had the opportunity to conduct discovery to ascertain the assets of the marital estate and their value. In opting not to conduct her own discovery, but choosing instead to rely upon Husband's representations of the marital assets, Wife may not later assert that the stipulation should be set aside upon the basis that assets were omitted.

■ However, a stipulation may be modified if the existence of fraud, mistake or undue influence is proved. *Harlan v. Harlan* (1989) Ind.App., 544 N.E.2d 553, 556, *opinion affirmed by* (1994) Ind., 560 N.E.2d 1246. Wife maintained, and the trial court agreed, that Husband had committed constructive fraud when he failed to disclose the existence of the individual account.

■ "Constructive fraud arises by operation of law when there is a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud." *Biberstine v. New York Blower Co.* (1993) Ind.App., 625 N.E.2d 1308, 1315. In order to prove constructive fraud, a party must establish: (1) that there is a duty owed by the party charged to the complaining party as a result of their relationship, (2) a violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists, (3) reliance on the misrepresentation by the complaining party, (4) injury to the complaining party as a result of the misrepresentation, and (5) an advantage gained by the charged party at the expense of the complaining party. *Voigt v. Voigt* (1994) Ind.App., 645 N.E.2d 623, 625, *trans. denied.* Relying upon *Selke v. Selke* (1992) Ind., 600 N.E.2d 100,

Husband contends that he did not owe Wife a duty to disclose the individual account on the marital balance sheet.

In *Selke*, the parties entered into a property settlement agreement which was subsequently approved by the trial court and which gave husband all of the pension rights from his employment. *Id.* at 101. Wife later filed a petition to set aside the agreement on grounds that husband had allegedly committed constructive fraud by failing to inform wife of the value of a profit sharing plan. *Id.* The trial court denied the wife's petition and she appealed. *Id.* Our Supreme Court held that absent "unique factual circumstances," such as a provision in a property settlement agreement requiring full disclosure or a discovery request made under the trial rules, there is no express or implied duty of spontaneous full disclosure of assets. *Id.* According to Husband, *Selke* is controlling because Wife neither made a discovery request under the trial rules nor included a provision requiring full disclosure in the property settlement agreement. We disagree.

■ *Selke* did not limit "unique factual circumstances" to discovery requests and full disclosure provisions. Therefore, we are not limited in our review as Husband would suggest and we look to the record to determine if there are unique factual circumstances which would bring this case within the exception to the general rule. The record reveals that the trial court ordered each party to file a marital balance sheet, including date-of-filing values and supporting documentation, as well as a proposed division of assets. The court also informed the parties that failure to follow the court's mandate would result in removal of the case from the court's calendar and appropriate sanctions, thereby indicating the court's intention that the parties make full disclosure of assets. Clearly the trial court had authority to enter such an order. *See* I.C. 33–4–2–3 (Burns Code Ed. Repl.1998). Also, it is well settled that a party must comply with a court order.

*See Meade v. Levett* (1996) Ind.App., 671 N.E.2d 1172, 1181. Thus, under these circumstances, Husband had a duty to disclose the individual account.[4]

■ Husband also asserts that Wife had no right to rely upon the information submitted on Husband's marital balance sheet and, therefore, does not meet the requisite element of reliance necessary to successfully maintain an action for constructive fraud. Reliance is established when the complaining party demonstrates that he or she had a right to rely on the representations. *Dawson v. Hummer* (1995) Ind. App., 649 N.E.2d 653, 665. While "[t]he law is designed to protect the weak and credulous from the wiles and stratagems of the artful and cunning," it will not protect those who "stand mentally on equal footing and in no fiduciary relation," if they fail to exercise common sense and judgment. *Biberstine, supra,* 625 N.E.2d at 1316.

■ In support of his contention that Wife had no right to rely on the representations set forth in his marital balance sheet, Husband argues that Indiana Law fails to presume that one party in a marriage is superior or dominant over the other. Husband further argues that it was unreasonable for Wife to rely on his representations, given the contentious nature of the dissolution proceedings. While it is true that Indiana Law no longer recognizes a presumption of superiority or dominance by one spouse over another, a spouse is not precluded from proving the superior knowledge or status of the other spouse to justify reliance. *Womack v. Womack* (1993) Ind., 622 N.E.2d 481, 483.

■ The record before us provides sufficient evidence to refute Husband's contention that Wife had no right to rely on the representations he made to the court concerning the G.E. stock accounts. Husband was employed by General Electric. He "sign[ed] up" for the stock investment program when he began working at G.E. Record at 720. The stock investment was made automatically from his paycheck. Husband knew the individual account existed both at the time he filed his Petitioner's Proposed Net Worth Statement and Petitioner's Proposed Division of Assets and Debts and at the time he signed the Stipulation On Net Worth Statement and Division of Assets. Husband received an annual account statement in addition to quarterly dividend checks. Because the dissolution was filed in September of 1996, Husband would have received an annual stock statement and dividend checks while the dissolution action was pending. In addition, Husband demonstrated trustworthiness when he included in the Stipulation On Net Worth Statement And Division Of Assets a G.E. account that had been omitted from his Petitioner's Proposed Division of Assets and Debts.[5]

Although Wife testified that she knew her husband individually owned shares of GE stock and that they also jointly owned shares of GE stock, she also testified that she believed all of the shares of stock were in one account and thus had been included in the Stipulation on Net Worth Statement and Division of Assets. She further testified that she did not understand the details of Husband's employment benefits with G.E. and that she relied upon Husband's statements "because he had the informa-

---

4. We reject Husband's contention that a party involved in a dissolution proceeding might choose to omit an asset because he or she considered it to be non-marital property. Husband claims that the purpose of marital balance sheets is not to definitively determine the assets but to determine on what issues the parties agree and on which issues they do not. In this case, the court's order indeed might have served numerous purposes. Nonetheless, when a party is under a specific court order to disclose all assets, he may not unilaterally decide whether a certain asset should be included in the marital estate. Further, if a party believed that an asset should not be included in the marital estate, such belief would be more appropriately reflected in the proposed distribution of assets, not the marital balance sheet.

5. *See supra* note 3.

tion . . . and he had always handled that." Record at 451. In addition, Wife could not have obtained information on the individual account without both a Subpoena to G.E. and an authorization from Husband. Husband, as the sole owner of the account, only had to request the information to receive it. Wife's only significant involvement with this asset was to deposit the dividend checks.

Given Husband's superior knowledge of and ability to obtain information on the G.E. stock accounts, and his willingness to include in the final division of marital assets a joint G.E. asset he had previously omitted from his proposed division of assets, it was not unreasonable for Wife to rely on Husband's representations concerning the G.E. stock accounts.

 Husband further argues that the doctrine of "unclean hands" bars Wife from claiming constructive fraud in that she failed to conduct any discovery upon the value of marital assets. For the doctrine of unclean hands to apply, the party charged with having unclean hands must be guilty of intentional misconduct. *Wagner v. Estate of Fox* (1999) Ind.App., 717 N.E.2d 195, 202. Furthermore, the doctrine is usually reserved for those situations where one party is free from wrongdoing. *Stewart v. Jackson* (1994) Ind. App., 635 N.E.2d 186, 189, *trans. denied.*

 As noted above, Wife knew Husband owned individual stock, but believed the value of that stock had been included in the value of the G.E. stock account that Husband had disclosed. Accordingly, Wife made no additional discovery request concerning this asset. Clearly Husband had superior knowledge of and ability to obtain information concerning the account. We refuse to say, as a matter of law, that Wife's failure to conduct discovery amounts to intentional wrongdoing. Furthermore, Husband's knowledge of the ac-

count and subsequent conduct in this situation is certainly not above reproach. Based upon the facts in this case, the doctrine of unclean hands does not apply. Accordingly, we affirm the trial court's finding that the Husband committed constructive fraud.

## II. Value of Joint Account

Implicit in the issue of the trial court's reopening the parties' property distribution is whether the trial court erred by additionally ordering Husband to transfer half of the stock in the joint account, which account was included in the stipulation and by reference, in the dissolution decree. The trial court, in enforcing its "intended distribution scheme" ordered Husband to transfer to Wife half of the stock in the joint account plus all dividends and growth that had accrued to that half since the date of separation, including the two for one stock split which occurred on May 9, 1997. Husband maintains that Wife is only entitled to $9,420.50 which is half the value to which they stipulated and not half the value of the joint account as reconstituted by the trial court's order.

In *Paxton v. Paxton* (1999) Ind.App., 709 N.E.2d 31, *trans. denied,* a panel of this court held that the trial court erred when it ordered the Wife to transfer a sum representing forty-five percent of the IRA account together with eight percent annual statutory interest to the Husband three years after the decree. The IRA had actually increased in value by sixteen percent. The court reasoned that the division of the IRA was not a money judgment but a division of the marital assets.[6] *Id.* at 33. The court further stated that "[t]his windfall results in Wife receiving more than the dissolution decree allocated to her, and fails to divide the marital property 'in a just and reasonable manner.' " *Id.* (*quoting Waggoner v. Waggoner* (1988) Ind. App., 531 N.E.2d 1188, 1189).

**6.** Ind.Code 24–4.6–1–101 (Burns Code Ed. Repl.1996) permits interest at the annual rate of eight percent to be accorded to money

judgments from the date of judgment until satisfaction.

Here, the parties stipulated that the value of the stock in the joint account was $18,841 and agreed to an equal division. The trial court incorporated that stipulation into the decree but did not elucidate how that division should be accomplished. Wife attempted to have the stock transferred but neither party could agree upon the amount of stock to be transferred. Husband desired to transfer stock worth $9,420.50 and Wife wanted half the stock. The transfer was, thus, delayed.

The decree merely values the stock and apportions one-half the value to each party. We hold that Wife was entitled to half the stock. We do so, because to do otherwise, would allow Husband to unfairly profit from the delay in transfer. If that transfer had been accomplished upon the entering of the decree, Husband would not have accumulated the benefit of growth, dividends, or the two for one stock split which accrued to Wife's portion of the shares. The trial court was entitled to enforce the division of assets it had incorporated into the decree in the manner in which it did. *See Niccum v. Niccum* (2000) Ind.App. 734 N.E.2d 637.

Therefore, the portion of the trial court's order which states that Husband shall transfer to Wife half the stock in the joint account including half the dividends and growth and the two for one stock split is in all respects affirmed.

### III. Attorney's Fees

Husband finally asserts that it was error for the trial court to order Husband to pay Wife's attorney's fees. Husband contends that the trial court failed to explain its award and that the award of attorney's fees is an abuse of discretion.

The trial court may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding in connection with the marriage dissolution. Ind.Code 31–15–10–1 (Burns Code Ed. Repl.1997). When reviewing an award of attorney's fees in connection with a dissolution action, we reverse the trial court only for an abuse of discretion. *In re Marriage of Pulley* (1995) Ind.App., 652 N.E.2d 528, 532, *trans. denied.* The trial court may consider any misconduct by one of the parties which resulted in the other party incurring additional fees. *Meade v. Levett* (1996) Ind.App., 671 N.E.2d 1172, 1179. However, a court is not required to give a reason for its decision to award attorney's fees. *Holmes v. Holmes* (2000) Ind.App., 726 N.E.2d 1276, 1285.

Our decision today affirms the trial court's order reopening the parties' dissolution and modifying the property disposition. We have also affirmed that part of the trial court's order enforcing the original decree insofar as its division of the GE stock is concerned. Under these circumstances, we cannot hold that the trial court abused its discretion in awarding Wife attorney's fees.

Therefore, the judgment is affirmed.

BAILEY, J., and VAIDIK, J., concur.